PEOPLE v TOOHEY

Docket No. 88974. Argued April 2, 1991 (Calendar No. 1). Decided
    August 27, 1991.

Raymond G. Toohey was convicted, following a bench trial in the
    Washtenaw Circuit Court, William F. Ager, Jr., J., of possession
    with intent to deliver cocaine and of driving while under the
    influence of intoxicating liquor. The Court of Appeals, HOOD,
    P.J., and MAHER and CYNAR, JJ., reversed the conviction and
    ordered the charges dismissed because the cocaine was discov-
    ered pursuant to an inventory search of the defendant's auto-
    mobile, and the prosecutor failed to establish that the impound-
    ment of the automobile was reasonable (Docket No. 111717).
    The people appeal.

    In an opinion by Justice BRICKLEY, joined by Justices BOYLE,
    RILEY, GRIFFIN, and MALLETT, the Supreme Court held:

    The impoundment and inventory search were constitution-
ally valid because the police acted in accordance with estab-
lished departmental procedures.

    1. The Fourth Amendment of the United States Constitution
and Const 1963, art 1, § 11 require searches and seizures to be
conducted reasonably. In most cases, a warrant supported by
probable cause is required in order for the results to be admis-
sible. When police officers conduct a search and seizure without
a warrant, the appropriate standard for determining the consti-
tutionality of police conduct is whether the search was reason-
able in light of the facts and circumstances of the case.

    2. Evidence of any narcotic drug seized outside the curtilage
of a dwelling house in a manner which otherwise would be in
violation of art 1, § 11, still is admissible as provided by art 1,
§ 11. Thus, a defendant from whom such evidence is seized is
provided no greater protection under art 1, § 11 than that
provided by the Fourth Amendment.

    3. The performance of an inventory search by police, as an
administrative function rather than a function of a criminal

REFERENCES
Am Jur 2d, Searches ans Seizures §§ 34, 57, 103.5.
Lawfulness of "inventory search" of motor vehicle, impounded by
    police. 48 ALR3d 537.

investigation, in accordance with established departmental regulations that must be followed by all officers, is a recognized exception to the warrant requirement. It is an appropriate means to protect the owner's property while in police custody, to protect the police against claims of lost or stolen property, and to protect the police from potential physical danger. Whether the police may satisfy these concerns in a less intrusive or alternative manner does not render an inventory search unconstitutional.

4. The purposes for impounding an arrested person's automobile are similar to those for conducting inventory searches of an arrested person's possessions. Each is undertaken as part of the caretaking functions performed by the police and is not intended to be a function of a criminal investigation. Thus, it is appropriate to apply the same standard for determining the constitutionality of the initial impoundment of an automobile as is applied for a subsequent inventory search: An established set of departmental procedures must exist which all officers must follow in making the determination whether to impound, and impoundment must not be used as a pretext for conducting a criminal investigation.

5. In this case, the police were authorized by ordinance and conforming police policy to impound an automobile after a driver was arrested, if, in their discretion, they determined that the vehicle otherwise would be left unattended. The impoundment of the defendant's automobile was a reasonable seizure by the police in light of the facts and circumstances presented. There was compliance with the mandates of the departmental policy, and there was no showing that the impoundment was a pretext for a criminal investigation. Rather, it was merely the performance of the police officers' caretaking function.

Reversed.

Chief Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that the seizure was unreasonable. It is clear from the facts of this case that the impoundment of the vehicle was a pretext for conducting a criminal investigation. There was no need to impound the defendant's legally parked vehicle; it posed no danger to traffic and would not have been unattended. Thus, impoundment not only was unnecessary, but was contrary to the ordinance.

183 Mich App 348; 454 NW2d 209 (1990) reversed.

1. SEARCHES AND SEIZURES — AUTOMOBILES — IMPOUNDMENT — INVENTORY SEARCHES.

Impoundment and inventory searches of automobiles are valid

when the police act in accordance with established departmental procedures (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — AUTOMOBILES — IMPOUNDMENT — INVENTORY SEARCHES.

The purposes for impounding an arrested person's automobile are similar to those for conducting inventory searches of an arrested person's possessions; each is undertaken as part of the caretaking functions performed by the police and is not intended to be a function of a criminal investigation; the standard for determining the constitutionality of the initial impoundment of an automobile, as for a subsequent inventory search, requires an established set of procedures which the police must follow in making the determination whether to impound, and the impoundment must not be used as a pretext for conducting a criminal investigation (US Const, Am IV; Const 1963, art 1, § 11).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Marilyn A. Eisenbraun,* Assistant Prosecuting Attorney, for the people.

*Frank K. Rhodes, III,* for the defendant.

BRICKLEY, J. We are asked to determine whether evidence seized by the police after impounding the defendant's car and conducting an inventory search should be suppressed as fruits of an unconstitutional search and seizure. We hold that the impoundment and inventory search were constitutionally valid because the police acted in accordance with established departmental procedures.

I

FACTUAL BACKGROUND

After completing a round of golf, defendant and John Albert joined some other golf league participants at the clubhouse for drinks and food. About 11:30 P.M., defendant and Albert left the clubhouse

in separate vehicles and traveled to Fraser's Pub where they each consumed two mixed drinks. They left the pub at approximately 12:30 A.M. on July 7, 1987, in defendant's car, a BMW, with defendant at the wheel.

They were observed by two Ann Arbor police officers who testified that the defendant crossed the yellow line of the street and drove in an erratic manner, leading them to conclude that the defendant was operating his vehicle while intoxicated. Defendant failed a sobriety test, registering 0.10 percent on a Breathalyzer, and was arrested for OUIL. The passenger, John Albert, remained in the defendant's automobile during these events.

A tow truck was requested in order to have the vehicle transported to the impound lot because it appeared that the passenger was intoxicated to the extent that he could not be trusted with the vehicle. Defendant asked if his wife could be contacted by John Albert in order to take custody of the automobile; however, a police officer denied this request because he mistakenly believed that police policy *required* the vehicle be impounded when it was left unattended after an arrest.[1]

Before it was towed away, an inventory search of the automobile was conducted, pursuant to departmental policy applicable to impoundment of vehicles. A plastic baggie containing a white powdery substance, later determined to be cocaine, was discovered under the driver's seat during this search. The officer then searched the trunk of the

[1] A police officer *may* immediately remove and impound a vehicle in any of the following situations.

\* \* \*

i. The driver of a vehicle is taken into custody by the Police Department and such vehicle would thereby be left unattended. [Ann Arbor Police Department Information & Procedural Order, No. 80C, § VI(A)(1)(i). Emphasis added.]

vehicle where defendant's golf clubs were located and discovered a brown paper bag, within one of the compartments of the golf bag, that contained another plastic baggie in which a "large quantity" of a white powdery substance, later determined to be cocaine, was found.

Defendant asserted the cocaine should be suppressed as unconstitutionally acquired evidence. The trial judge stated that this Court's decision in *People v Krezen,* 427 Mich 681; 397 NW2d 803 (1986), required a determination "whether the impoundment was arbitrary or unreasonable, taking into account all of the surrounding circumstances." The court then found that the police had acted reasonably in this particular situation. The defendant was found guilty following a bench trial.

The Court of Appeals reversed the conviction and ordered that the charges be dismissed because the cocaine was discovered pursuant to an unconstitutional seizure. It determined that the prosecutor had failed to establish that the impoundment of defendant's automobile was reasonable, in light of *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), and *Krezen, supra.* The Court of Appeals stated:

> Because the only reason given for the impoundment in this case was the existence of the local ordinance, and because there were no other facts presented that would otherwise justify the impoundment of the vehicle as being reasonable under the circumstances, we find that the police did not sustain their burden in establishing the reasonableness of the seizure. Further, we believe that, by relying upon the possibility of theft or vandalism as its basis for finding the impoundment to be proper, the trial court clearly erred when this concern was neither expressed at the hearing nor supported by the record. [183 Mich App 348, 358; 454 NW2d 209 (1990).]

The Court of Appeals appeared to require more than an adherence to an existing departmental regulation to justify impoundment of a vehicle. Police officers that impound a vehicle would be required, under this rationale, to state, case by case, that the potential for civil liability was a factor in deciding whether to impound a vehicle after the operator had been placed under arrest. This appears to be a rather narrow application of the United States Supreme Court and Michigan Supreme Court cases interpreting the reasonableness of impounding and searching automobiles under such circumstances. This Court granted leave to appeal. 436 Mich 880 (1990).

II

The constitutionality of any search and seizure conducted by the police depends on an analysis of the Fourth Amendment of the United States Constitution[2] and art 1, § 11 of the Michigan Constitution of 1963.[3] Each requires searches and seizures to be conducted reasonably, and in most cases that requires issuance of a warrant supported by probable cause, in order for the results to be admissible. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961).

---

[2] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

[3] The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. [Const 1963, art 1, § 11.]

Any narcotic drug which is seized outside the curtilage of any dwelling house, in violation of art 1, § 11 of the Michigan Constitution, is still admissible pursuant to the language of that provision.

> The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug . . . seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.]

Therefore any defendant from whom there is a seizure of narcotic drugs is provided no greater constitutional protection under art 1, § 11 than that provided by the Fourth Amendment, and the exclusionary rule derived from that amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment. See *Mapp, supra; People v Nash,* 418 Mich 196; 341 NW2d 439 (1983).

The United States Supreme Court has created a number of exceptions to the need for the police to obtain a warrant to satisfy the mandates of the Fourth Amendment. These exceptions were created for situations in which the Court determined that the warrant requirement was not intended to apply.[4] The performance of an inventory search by the police in accordance with departmental regulations is such an established exception to the warrant requirement.[5] Such a search is considered to

[4] Examples of the exceptions are: (1) searches incident to arrest; (2) automobile searches and seizures; (3) seizure of items in plain view; (4) where there is consent; (5) stop and frisk type searches; (6) where justified by exigent circumstance. See *People v Blasius,* 435 Mich 573; 459 NW2d 906 (1990).

[5] We note that while the United States Supreme Court refers to the inventory search as an exception to the warrant requirement of the Fourth Amendment; it would be more accurate to refer to such searches as exceptions to the probable cause requirement of that amendment.

be an administrative function performed by the
police, rather than part of a criminal investigation
which the Fourth Amendment was intended to
circumscribe.

When police officers are entitled to conduct a
search and seizure without a warrant, the appro-
priate standard for determining the constitutional-
ity of the police conduct is whether the search was
reasonable. See *Cady v Dombrowski,* 413 US 433,
448; 93 S Ct 2523; 37 L Ed 2d 706 (1973).

Evaluation of the reasonableness of such a
search and seizure "depends upon the facts and
circumstances of each case . . . ." *Cooper v Cali-
fornia,* 386 US 58, 59; 87 S Ct 788; 17 L Ed 2d 730
(1967). The question before us then is whether
such conduct by the police was reasonable under
the facts and circumstances of this case.

## III

The prosecution asserts that the inventory
search was properly conducted in accordance with
standard departmental regulations, that the im-
poundment of the automobile was reasonable in
light of the circumstances presented to the police
officers, and was conducted in conformity with this
Court's decision in *People v Krezen, supra.*

Defendant asserts constitutional deprivation be-
cause the Ann Arbor police officers did not follow
their own departmental regulations for impound-
ing automobiles since the automobile in this case
would not have been left unattended after the
arrest and because the Ann Arbor police should
have allowed the automobile to be turned over to
the passenger or contacted his wife. The ability of
the Ann Arbor police officers to exercise discretion
in determining when to impound an automobile,
pursuant to the language in the Ann Arbor Police
Department Impound Policy, is also claimed to

create a constitutional infirmity in these standardized impound regulations.[6]

## IV

This Court has not had an opportunity to adequately determine the appropriate standard for analyzing the constitutionality of the impoundment of an arrested person's vehicle and a subsequently conducted inventory search. Although we addressed this issue in *Krezen,* no decision regarding the constitutionality of police officers' conduct in these situations achieved majority status.[7]

Even though impoundment is more of a seizure than a search, the validity of the latter is interrelated with the legality of the former. Thus, it is instructive to consider the evolution of the constitutionality of both the impoundment and the inventory search of a person's personal possessions.

### A

#### CASES FROM THE UNITED STATES SUPREME COURT

Inventory searches were first accepted as consti-

---

[6] Defendant also asserted that the search was improperly conducted because the police officer was not aware of his ability to exercise discretion in deciding to impound defendant's automobile. This does not create a constitutional infirmity in the instant case because the police officer believed he was acting in accordance with the department regulations and the impoundment was authorized in these particular types of situations, albeit with discretion. Furthermore, it has not been suggested that the Fourth Amendment requires that the police impoundment policy must allow discretion to be exercised by the individual officer.

[7] In the aftermath of our Supreme Court's inability to achieve a majority holding in *People v Krezen [supra],* the proper test for evaluation of an inventory search is somewhat unclear. About the only certain axiom to be gleaned from *Krezen* is that the police must act reasonably in light of the circumstances. [*People v Tucker,* 181 Mich App 246, 253; 448 NW2d 811 (1989) (citation omitted); see also *People v Russell,* 174 Mich App 357; 435 NW2d 487 (1989).]

tutionally valid without warrants by the United States Supreme Court in *Cady v Dombrowski, supra.* In *Cady,* an off-duty police officer was involved in a single-car accident which left him unconscious and his personal vehicle disabled on the side of the highway. The police impounded the disabled automobile and inventoried the contents in order to determine whether the officer had left his service revolver in the automobile. That led to the discovery of blood-stained clothing which became evidence in a subsequent conviction of first-degree murder. The United States Supreme Court opined that police are often required to perform "caretaking functions" of automobiles which is separate and distinct from criminal investigations undertaken by the police.

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. [*Id.* at 441.]

Because there is no probable-cause analysis involved in a routine inventory search, such caretaking functions were determined to not require a search warrant in order to be constitutionally valid. Furthermore, the police are not required to pursue the least intrusive alternatives in order for an inventory search to be held constitutionally valid.

> The fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, by itself, render the search unreasonable. [*Id.* at 447.]

Therefore, the United States Supreme Court has determined that the impoundment and subsequent inventory search of a vehicle is constitutionally valid as part of the caretaking function performed by the police.

In *South Dakota v Opperman, supra,* police impounded an automobile which had been parked on a city street overnight in violation of a local city ordinance. The impoundment and inventory search of the automobile were conducted in accordance with department regulations and led to the discovery of marijuana in the automobile. The Supreme Court held that the police clearly have the authority to impound parked vehicles which are determined to jeopardize public safety and the efficient movement of vehicular traffic. Impoundment of vehicles by the police in parking situations is clearly a caretaking function performed by police officers. However, the court in *Opperman* did not indicate that it intended to limit the authority of the police to impound automobiles only to those situations where they are impeding traffic or jeopardizing public safety. An inventory search conducted by the police subsequent to an impoundment, was said to be based upon three public policy concerns.

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. The practice has been viewed as essential to respond to incidents of theft or vandalism. [*Id.* at 369. Citations omitted.]

An inventory search that is conducted pursuant to

standardized police procedure is considered reasonable because the resulting intrusion will be limited to the extent it is necessary to fulfill the caretaking function.

> The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. [*Id.* at 372.]

> The Court [in *Cady*] carefully noted that the protective search was carried out in accordance with *standard procedures* in the local police department, *ibid.,* a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function. [*Id.* at 374-375. Emphasis in original.]

The Court placed emphasis on the inventory search not being a pretext for the police to conduct an investigative search of an arrested person's personal property without a warrant. The lack of an underlying motive or bad faith by the police in conducting an inventory search is an important aspect which courts must consider in determining the validity of such a search.

> As in *Cady,* there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive. [*Opperman* at 376.]

The Court then determined that the police had acted reasonably when they impounded the automobile and subsequently performed an inventory search.

> The Vermillion police were indisputably engaged in a caretaking search of *a lawfully im-*

*pounded automobile.* The inventory was conducted
only after the car had been impounded for multi-
ple parking violations. The owner, having left his
car illegally parked for an extended period, and
thus subject to impoundment, *was not present to
make other arrangements for the safekeeping of
his belongings. The inventory itself was prompted
by the presence in plain view of a number of
valuables inside the car.* [*Id.* at 375-376. Emphasis
added; citation omitted.]

The Court did not evaluate the act of impound-
ment other than to state that the automobile was
legally impounded because it was parked in viola-
tion of the local ordinance. The comments by the
Court regarding the inability of the owner to make
alternate arrangements, and that valuables inside
the automobile were within plain view of the
general public, could be interpreted as circum-
stances which must exist in order for an impound-
ment and subsequent inventory search of an auto-
mobile to be considered reasonable and thereby
constitutional. However, buttressed by subsequent
case law, we interpret these statements as merely
constituting additional circumstances supporting
the Court's decision that the impoundment and
inventory search of Opperman's automobile was
reasonable in that particular situation. There was
no indication in the opinion that an owner must
be allowed to make alternate arrangements for the
safekeeping of an automobile; nor was it indicated
that valuables must be in plain view of the general
public or in jeopardy of being stolen before an
automobile may be impounded by the police. As
previously stated, the critical factors which the
court must evaluate are whether the police acted
in accordance with departmental regulations when
conducting the inventory search and that it was
not done for criminal investigation.

In *Illinois v Lafayette,* 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983), the Court cautioned against judicial supervision with respect to the best administrative methods for conducting inventory searches.

> We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its [sic] employees and preserve the security of the station house. [*Id.* at 648. Emphasis deleted.]

Therefore, it is clearly established that police have the authority to promulgate administrative procedures to conduct such searches, unless violative of the reasonableness requirement of the Fourth Amendment.

In *Colorado v Bertine,* 479 US 367; 107 S Ct 738; 93 L Ed 2d 739 (1987), the Supreme Court analyzed a factual situation similar to that before us. Upon his arrest for drunk driving, the defendant's van was impounded in accordance with police regulations, which gave the police officer the option to impound an arrested person's vehicle or to park and lock it. An inventory search of the impounded van resulted in the discovery of controlled substances which led to the defendant's conviction for their possession. An inventory search of an impounded vehicle again was held to be an exception to the warrant requirement for searches and seizures of personal possessions unless conducted as a pretext for a criminal investigation.

> As [the Colorado Supreme Court] recognized, inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. . . . *"The probable-cause approach is*

*unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations."* [*Bertine* at 371, citing *Opperman, supra.* Emphasis added; citations omitted.]

It is sufficient for courts to assess the constitutionality of police conduct by whether they acted in accordance with standardized departmental procedures when conducting an inventory search, in the absence of a claim that the police were attempting to conduct further criminal investigation disguised as an inventory search.

The most important aspect of the *Bertine* decision relates to the discussion of constitutionality of the impoundment of the arrested person's van in that case. The Court determined that the discretion exercised by the police officer in deciding whether to impound or park and lock the van was not violative of the Fourth Amendment reasonableness mandate and held the impoundment by the police to be constitutionally valid.

Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion *so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.* [*Bertine* at 375. Emphasis added.]

We glean from this that courts need not second-guess a police officer's exercise of professional judgment regarding impoundment of an automobile when the judgment was exercised in accordance with otherwise reasonable police department regulations. The exercise of discretion within prescribed regulations in determining whether to impound an automobile should not, absent bad

faith, necessarily render unconstitutional the decision to impound.

It is important to provide a clear and uniform set of guidelines with which the police may gauge their everyday conduct and decisions.

> We reaffirm these principles here: " '[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " [*Id.* at 375, citing *Lafayette, supra.*]

Allowing police officers to follow standardized procedures to perform their caretaking functions allows each officer to know the constitutionally permissible limits of conduct in a given situation.

The United States Supreme Court reiterated that police officers need not utilize the least intrusive means to secure and protect the automobile.

> And while giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, we said in *Lafayette:*
>
> "The real question is not what 'could have been achieved,' but whether the Fourth Amendment requires such steps . . . .
>
> "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." [*Bertine* at 373-374. Emphasis deleted.]

Therefore, the police are not required to pursue less intrusive alternatives when their decisions are in accordance with standardized procedures regarding impoundment.

B

MICHIGAN SUPREME COURT CASES

This Court has undertaken only a limited analysis of the constitutionality of an impoundment and a subsequent inventory search of an arrested person's possessions under either the United States or Michigan Constitution.

There are essentially two decisions which comprise this Court's review of these issues. The first was *People v Long (On Remand),* 419 Mich 636; 359 NW2d 194 (1984) *(Long II),*[8] in which the inventory search was determined to be invalid because the police had not incorporated or promulgated any standard departmental rules regarding the procedures to be followed when conducting an inventory search of an automobile. The constitutionality of the inventory search of the defendant's automobile was summarized in the concluding paragraph of *Long II:*

> Whenever a motor vehicle has been *lawfully impounded,* the Fourth Amendment permits the police, absent a warrant, to conduct an inventory search pursuant to standard procedures, so long as the police department has established or standard procedures for conducting inventory searches. [*Id.* at 649-650. Emphasis added.]

[8] The United States Supreme Court reversed and remanded the decision by this Court in *People v Long,* 413 Mich 461; 320 NW2d 866 (1982) *(Long I).* In *Long I* it was held that the search of the defendant's automobile was unconstitutional because it did not fall within the stop and frisk exception created in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The United States Supreme Court remanded the case so that this Court could consider the constitutionality of the inventory search of the defendant's automobile which resulted in marijuana being found in the trunk. The constitutionality of the inventory search was not addressed in *Long I* because this Court had determined that the search of the defendant's automobile was not justified under *Terry,* thus precluding the necessity for further review.

There was no analysis in either *Long I* or *II* regarding the constitutionality of the impoundment; however, the analysis regarding inventory searches appears to be identical to that of the United States Supreme Court in *Opperman.*

In *People v Krezen, supra,* the defendant was arrested as she was leaving an airport after picking up a shipment of narcotics. Her automobile was impounded after she was arrested even though it was legally parked in the airport parking lot and was not obstructing the flow of traffic. A purse, located in plain view in the front seat, was discovered to contain narcotic drugs. The issue was succinctly stated by Justice BOYLE in her plurality opinion:[9]

> The true issue is whether the initial impoundment of Krezen's car was a constitutional violation. The impoundment occurred within the context of a standard departmental policy that, upon arrest of the driver, all vehicles not released to another driver were to be impounded. [*Id.* at 685.]

Justice BOYLE stated that the caretaking function performed by the police officers extended to the initial impoundment of the automobile.

> A number of courts have recognized that the possibility of theft or vandalism is a valid reason for impounding a car upon the arrest of the driver, especially where no other person is present to take control of the car. Other courts have recognized that leaving a car parked in a private location may be a nuisance. The impoundment was a caretaking function rather than an investigative one, instituted according to standard departmental policy to protect the defendant and the police from unnecessary thefts, recriminations, and civil suits. [*Id.* at 687-688. Citations omitted.]

9 Joined by Justices BRICKLEY and RILEY.

On the basis of this analysis, Justice BOYLE determined that the impoundment of Krezen's automobile was reasonable because it was conducted in accordance with standardized departmental procedures for impoundment of automobiles. This analysis was identical to that used for determining the constitutionality of inventory searches since the focus was the existence of standardized departmental regulations.

The ability of the police to use less intrusive means in order to protect the automobile from theft or vandalism, and also to protect the police against potential civil suit, did not render the impoundment in this case unconstitutional, under Justice BOYLE's analysis. *Id.* at 689.

Chief Justice WILLIAMS concurred in the result reached by Justice BOYLE; however, he employed a different analysis. He was "not persuaded that the police officers acted reasonably when they impounded the car," *id.* at 698, and believed that they had acted unconstitutionally. However, because he was convinced that the police could not have left the defendant's purse in plain view in the front seat of her car and that the cocaine located in the purse would have been discovered when the police removed it and conducted an inventory search of it, he agreed that evidence of the cocaine should not have been suppressed.

Justice LEVIN wrote in dissent,[10] raising many concerns regarding the analysis employed by Justice BOYLE and stated that the impoundment of defendant's automobile was unconstitutional.

C

SUMMARY

There has been clear acceptance and recognition of the inventory search of personal possessions as

---

[10] Joined by Justices CAVANAGH and ARCHER.

an exception to the Fourth Amendment warrant requirement as part of the caretaking function local police officers are required to perform. See *Cady, supra.* To be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation. See *Opperman* and *Long II.*

The United States Supreme Court has considered inventory searches to be an appropriate means to address three public policy concerns: (1) protection of the owner's property while in police custody, (2) protection of police against claims of lost or stolen property, and (3) protection of the police from potential physical danger. See *Opperman, supra.* Whether the police may achieve satisfaction of these concerns in a less intrusive or alternative manner does not render an inventory search unconstitutional. See *Cady, Opperman, Bertine, Lafayette,* and *Long II.*

The constitutionality of impounding an automobile has not been subjected to as extensive an analysis as inventory searches without warrants, even though inventory searches are preceded by an impoundment. Most of the cases involving impoundment of a person's possessions, usually an automobile, center upon an analysis of the inventory search under the assumption that the impoundment is constitutional. See *Cady, Opperman,* and *Long II.* The only requirement, which appears to have come from the early cases, is that the impoundment must have been carried out legally —insufficient for deciding whether the seizure will pass constitutional muster.

The public policy concerns and the purpose for impounding an arrested person's automobile are similar to those for conducting inventory searches

of an arrested person's possessions. Each is undertaken as part of the caretaking functions performed by the police and is not intended to be a criminal investigation function. For this reason, it is appropriate to apply the same standard for determining the constitutionality of the initial impoundment of an automobile as for a subsequent inventory search, i.e., an established set of procedures which the police must follow in making the determination whether to impound and not used as a pretext for conducting a criminal investigation.

This was the analysis adopted by Justice BOYLE in her plurality opinion in *Krezen.* The United States Supreme Court also has employed this type of analysis in deciding the constitutionality of police impoundment of a vehicle after the driver was arrested. In *Bertine,* decided after our decision in *Krezen,* the Court determined that the police had acted reasonably when they decided to impound the arrested person's van pursuant to standard procedures, even though there was an ability to exercise discretion with regard to whether the vehicle should have been impounded or simply parked and locked. The Court clearly adopted the same analysis as that employed in reviewing an inventory search of such a vehicle. This is the most logical analysis, since the purpose of each activity is interrelated and intended to accomplish similar results.

V

### APPLICATION OF THE LAW

In order to determine whether the impoundment and inventory search of Raymond Toohey's automobile by the police was constitutionally valid, an analysis of the impoundment policy of the Ann

Arbor Police Department, and how it was applied, must be undertaken.

The most relevant provision is located in § VI, written in accordance with Ann Arbor Ordinance 10:139, which provides:

> A police officer *may* immediately remove and impound a vehicle in any of the following situations.
>
> &ast;   &ast;   &ast;
>
> i. The driver of a vehicle is taken into custody by the Police Department and such vehicle would thereby be left unattended. [Information & Procedural Order, No. 80C, Impounding Vehicle Procedures, § VI(A)(1)(i). Emphasis added.]

Under this policy it would seem that if someone accompanying the arrested driver is able to take control of the automobile at the time of the arrest (i.e., the automobile would not be unattended), the police do not have the authority to impound the automobile. However, if the automobile is left unattended after the operator has been placed under arrest, the police are entitled to exercise their judgment regarding whether to impound. This appears to be a reasonable impoundment policy provision.

Defendant asserts that the department policy was constitutionally invalid because it allowed a police officer to exercise discretion in deciding whether impoundment was appropriate and, in the alternative, that the police officers' conduct was unconstitutional because they did not follow the mandates of the impoundment policy.

First, as we have seen, the ability of the police officers to exercise discretion within the parameters of a particular policy does not create a constitutional infirmity. See *Bertine, supra.* Defendant,

relying upon footnote 7 of Chief Justice Rehnquist's opinion in *Bertine*,[11] asserts that there was insufficient standardized criteria for the police in this case to consider in making the decision whether to impound. We disagree. The critical factor in determining whether too much discretion has been granted to police officers regarding impoundment of an arrested person's automobile is the ability for arbitrary searches and seizures to be conducted by the police officers. The possibility of arbitrary searches by the department appears to be curtailed in that there are limited opportunities in which the police are entitled to exercise discretion with regard to impoundment. The officer is authorized to impound the automobile only if it is determined that it would be left unattended. This establishes limited situations in which police officers would be permitted to exercise discretion regarding impoundment. The administrative body of the police department cannot foresee each situation which may arise that requires impoundment. Following the decision in *Bertine, supra,* we find that the police are entitled to exercise such discretion.

There has been no allegation that the police officers made the decision to impound defendant's automobile in order to conduct a criminal investi-

---

[11] In arguing that the Boulder Police Department procedures set forth no standardized criteria guiding an officer's decision to impound a vehicle, the dissent selectively quotes from the police directive concerning the care and security of vehicles taken into police custody. The dissent fails to mention that the directive establishes several conditions that must be met before an officer may pursue the park-and-lock alternative. For example, *police may not park and lock the vehicle where there is reasonable risk of damage or vandalism to the vehicle or where the approval of the arrestee cannot be obtained. Not only do such conditions circumscribe the discretion of individual officers, but they also protect the vehicle and its contents and minimize claims of property loss.* [*Id.* at 376, n 7. Emphasis added; citation omitted.]

gation. Defendant merely speculates, in brief, that the police involved in this case were "more interested in what a couple of 'yuppies' had in their new BMW, besides golf clubs, when he arrested one for drunk driving, than he was in volunteering to protect the owners property." In light of the facts and circumstances surrounding the impoundment decision, we are convinced it constituted a reasonable seizure by the police.

Second, defendant asserts that the police are required to show a specific need to obtain possession of the vehicle in order for the impoundment to constitute a community caretaking function, and that being left unattended is not sufficient justification for impoundment. Numerous cases are cited by defendant for the proposition that police must demonstrate more than that the vehicle would be unattended in order for impoundment to be proper. Most of these cases cited by the defendant were decided prior to *Bertine,* thus they were deprived of that Court's analysis regarding the appropriate standard for the constitutionality of impoundment decisions. In light of *Bertine,* no separate justification for impounding an automobile is needed if the officers acted in accordance with a standard impoundment policy of the police department and without an improper alternate motive for the impoundment.

Third, defendant asserts that the automobile was not left unattended at the time he was placed under arrest because of the presence of passenger John Albert. The defendant would require that the police turn over control of the automobile to any passenger that might be traveling with the arrested driver, even if the police did not believe that person could legally operate the automobile after obtaining control of it. In this case, the police believed the passenger to be sufficiently intoxi-

cated as to be unable to legally operate the auto-
mobile and that possession and control of it should
not be granted to him. The term "unattended" is
not specifically defined within the impoundment
policy and is susceptible of different interpreta-
tions. A similar situation was presented in *United
States v Griffin,* 729 F2d 475, 480 (CA 7, 1984),
where both the operator and the passenger were
unable to operate the automobile seized by the
police.

> The record reveals that Charles and Jerome
> Griffin at no time presented Officer Hostetter with
> documentary proof of ownership of the 1982 Cor-
> vette. In addition, the driver of the 1982 Corvette,
> Jerome Griffin, had no valid driver's license, and
> the passenger, Charles Griffin, was under arrest
> and being transported back to Lake County, Indi-
> ana, to answer for an outstanding bench warrant.
> Thus, neither Charles nor Jerome could lawfully
> remove the vehicle from its parked position in the
> emergency lane of the Indiana Toll Road.

In *People v Castle,* 126 Mich App 203, 210; 337
NW2d 48 (1983), the Court of Appeals similarly
held that arrangements to take possession could
not be made with a passenger who did not possess
a valid operator's license.

> After the defendant was arrested, the officer, at
> first, made arrangements with Bolden, the passen-
> ger in defendant's car, to have him drive the car
> away. It was only when the officer discovered that
> Bolden did not have a valid operator's license that
> he impounded the vehicle. Under these circum-
> stances, the trial court was justified in finding that
> the impoundment was not a mere pretext for the
> subsequent inventory search.

The police must be allowed to determine in what

situations a passenger is to be granted control of a
vehicle. To require the police to release control to
any available passenger would defeat one of the
primary justifications for impoundment, namely,
avoidance of claims after the fact against the
police.

In light of the facts and circumstances presented
to the police officers at the time of the defendant's
arrest in the instant case, the decision that the
automobile should be impounded as an unattended
automobile was reasonable.

Fourth, it is alleged that the police should have
permitted the defendant's wife to take custody of
the automobile after the defendant was placed
under arrest. It may have been a less intrusive
alternative had the police allowed the defendant's
wife to be contacted; however, that is not determi-
native of the constitutionality of the impound-
ment. In *Bertine,* it was held that the ability of
the police to safeguard an arrested person's prop-
erty in a less intrusive manner than impoundment
did not render an otherwise reasonable impound-
ment unconstitutional. The police should be al-
lowed to determine the feasibility of making alter-
nate arrangements for the safekeeping of the auto-
mobile. Therefore, this claim should not render
unconstitutional the impoundment in this case
because the decision to impound was made by the
police officer in accordance with the standardized
departmental impoundment policy.

Accordingly, the impoundment of the defen-
dant's automobile was a reasonable seizure by the
police in light of the facts and circumstances pre-
sented in this case. The police officer complied
with the mandates of the departmental impound-
ment policy when he decided that the vehicle was
unattended after the driver was arrested and that
impoundment was the appropriate avenue to pro-

tect it from potential theft or vandalism. There was no showing that the impoundment of defendant's automobile was a pretext for a criminal investigation; rather, it was merely the performance of the police officer's caretaking function.

Defendant asserts that there was a failure to follow the inventory search provision of the Ann Arbor Police Department since the golf clubs could have been removed prior to impoundment of his automobile. See Ann Arbor Police Department Information & Procedural Order, No. 80D. This issue was not raised below, thus it is not properly preserved for review by this Court. See *People v Hamacher,* 432 Mich 157; 438 NW2d 43 (1989).

VI

CONCLUSION

Accordingly, we reverse the Court of Appeals decision in this case and reinstate the defendant's conviction. The impoundment and subsequent inventory search were conducted in accordance with departmental procedures and are thereby constitutional.

BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

CAVANAGH, C.J. (*dissenting*). Since I am unable to ascertain that the impoundment here was anything other than a pretext for conducting a criminal investigation, and because there was no necessity to impound the defendant's legally parked automobile, I would affirm the decision of the Court of Appeals.

I

The majority concludes that an impoundment is

reasonable if the police follow an established set of procedures and those procedures are not used as a pretext for a criminal investigation. In reaching its conclusion, the majority relies primarily on cases analyzing inventory searches and states that the policy concerns associated with impoundment are similar to those associated with inventory searches.

A review of the policy concerns stated by the majority suggests that they have little relationship to the issue of reasonable impoundment. The three policy concerns identified are:

> (1) protection of the owner's property while in police custody,
> (2) protection of police against claims of lost or stolen property, and
> (3) protection of the police from potential physical danger. [*Ante,* p 284.]

With regard to the first and second concerns, I would adhere to my Brother LEVIN's dissenting opinion in *People v Krezen,* 427 Mich 681, 707; 397 NW2d 803 (1986).

> While the courts are open to the filing of both valid and invalid claims, it would be disproportionate to hold that the law authorizes the police to impound personal property they have no duty to safeguard simply to protect against unfounded claims that they should have safeguarded the property. It would be chimerical to suggest that the City of Grand Rapids or the police officers would have been held liable in damages for loss or damage to Krezen's automobile or purse if they had not volunteered to take steps to protect such property.

Regarding the third concern, the defendant's car posed no more threat than any other legally parked automobile on the street. Certainly, the police would not be justified impounding any other legally parked automobile on the basis of the unsupported assertion that it posed some type of physical danger. Absent any other compelling reasons justifying impoundment, I would limit impoundment to "community caretaking situations."[1]

II

In this case, the officer impounded the vehicle pursuant to Ann Arbor Ordinance 10:139(1)(i) which provided:

> A police officer may immediately remove and impound a vehicle in any of the following situations. . . . The driver of a vehicle is taken into custody by the Police Department and such vehicle would thereby be left unattended.

This ordinance requires that two conditions be met before the officer has the authority to impound the vehicle. First, the driver must be placed under

[1] *South Dakota v Opperman,* 428 US 364, 368-369; 96 S Ct 3092; 49 L Ed 2d 1000 (1976). In *Opperman,* the Court stated:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," . . . automobiles are frequently taken into police custody. *Vehicle accidents present one such occasion.* To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. *Police will also frequently remove and impound automobiles which violate parking ordinances* and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. [Emphasis added.]

arrest. Second, the vehicle must be left un-attended.[2]

The facts established that the car was legally parked and no danger to traffic. The driver was being arrested for a misdemeanor in which his detention would not be lengthy. The driver had made arrangements for the passenger to contact the defendant's wife to take custody of his vehicle. Although the officer testified that he feared the car could be vandalized, and that he was concerned about the possibility of having to defend against a lawsuit, he allowed Mr. Albert to walk home through this supposedly bad neighborhood without any fear that injury to Mr. Albert could also result in a potential lawsuit. Finally, even though the officer testified that the passenger was unsteady on his feet, slurred his speech, and had a hard time understanding that he would not be given custody of the defendant's vehicle, the significance of this testimony is diminished by the passenger's uncon-tradicted testimony that the officer had made the decision to impound the vehicle before the officer even had an opportunity to observe him.[3]

---

[2] The majority concedes that "[t]he term 'unattended' is not specifi-cally defined within the impoundment policy and is susceptible of different interpretations." *Ante,* p 289. Attempting to narrow the understanding of the term "unattended," the majority cites *United States v Griffin,* 729 F2d 475, 480 (CA 7, 1984), and *People v Castle,* 126 Mich App 203; 337 NW2d 48 (1983). These cases are distinguish-able. In both *Griffin* and *Castle,* the passenger was denied custody for not possessing a valid operator's license. In other words, neither could legally drive the car. A determination that the passenger does not have a driver's license does not require discretion on the part of the officer, unlike the determination that the passenger is intoxicated. However, assuming the passenger could not safely or legally drive the automobile, he certainly could "attend" it pursuant to the defendant's request.

[3] The passenger testified as follows:

*Q.* All right, what happened then?
*A.* Then, the officer came up to the window, the one that was talking to Ray, and he asked me for my license and he asked

III

It is clear from these facts that this vehicle would not have been unattended and impoundment was not only unnecessary, but also contrary to ordinance. Therefore, I would affirm the Court of Appeals conclusion that the seizure was unreasonable.

LEVIN, J., concurred with CAVANAGH, C.J.

---

me and—at that time, he told me, once I gave him the license, you are going to have to leave. And I said, I don't understand what you—

*Q.* Okay, at that point, are you still sitting in the car?

*A.* Yes, I was. When I gave him the license, I was.

*Q.* All right, did you inquire as to why you would have to leave?

*A.* Yes I did. I asked him, I said, what about the car. And he said, we are impounding the car. And I said, what am I supposed to do and he said, there are two options. We can either call a cab for you or you can walk out of here, and that's when I was out of the car, when he informed me of my options. I said, well, what about taking the car. And he said, no, he said you either take a cab or you walk out of here. That's when I went back to the police car to talk to Ray.