*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

UNPUBLISHED
September 21, 2023

v

No. 360902
Wayne Circuit Court
LC No. 20-000404-02-FH

DARRIUS DURANTE COCRAN,

        Defendant-Appellee.

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

The prosecution appeals as of right an order dismissing the charges against defendant of possession of methamphetamine/ecstasy, MCL 333.7403(2)(b)(*i*), carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The order of dismissal followed an order granting defendant's motion to suppress evidence. We reverse and remand for further proceedings.

This case arises from a nonconsensual search by officers of the Detroit Police Department, conducted on November 20, 2019, of a vehicle in which defendant was the front seat passenger. The driver of the vehicle, Anthony Spears, was also charged with drug offenses arising from this search but he is now deceased. Defendant moved to suppress the evidence obtained by the officers in the search on the basis that the officers had no reasonable suspicion to stop the vehicle, and thus, any evidence obtained was the result of an unreasonable search and seizure. The prosecution opposed the motion, arguing that the traffic stop and search were lawful. An evidentiary hearing was conducted.

At the evidentiary hearing Detroit Police Officer Dorian Hardy testified that on the night of defendant's arrest, he and his partner, Officer Christopher Dodd, were on patrol in a police cruiser in Detroit. It was about 11:30 p.m. While stopped at a gas station, Officer Hardy noticed a tan Cadillac parked at the gas station. Two men were in the Cadillac, and Officer Hardy saw the driver of the vehicle, Spears, look at him with a "worried expression." Officer Hardy then saw Spears make a furtive gesture, i.e., "ben[d] down, with his right hand, to the right side." Officer Hardy did not approach the Cadillac at that time; instead, he waited for the Cadillac to exit the

parking lot. Officer Dodd also testified that he believed the passenger in the Cadillac "seemed to be worried." And before he and Officer Hardy left the gas station, they had a conversation about the worried look he saw defendant give him.

Officer Hardy saw the Cadillac pull out of the parking lot without using a turn signal. He also saw that the vehicle had a "defective license plate lamp." They followed the Cadillac while they ran the license plate on the vehicle and then activated the police cruiser's overhead lights and siren, as well as loudly directed the driver to pull over, but it did not stop for at least two blocks—which is not at all normal and, in Officer Hardy's experience, was an indicator that someone may be trying to conceal contraband. Once stopped, Officer Hardy approached the driver's side of the Cadillac and informed Spears that he stopped the vehicle for failing to use a turn signal and for having a defective license plate lamp. Officer Hardy asked Spears for his driver's license, but Spears was unable to find it. Officer Hardy told Spears to step out of the Cadillac and, after he complied, Spears was handcuffed and told to wait by the police car while Officer Hardy went to verify that Spears had a valid license.

After Spears was handcuffed, Officer Dodd asked the passenger in the Cadillac, defendant, to get out of the vehicle. Officer Dodd explained that he did not want their attention as officers split since the driver was out of the vehicle and by the police car, i.e., it was for the officers' safety. After defendant got out of the Cadillac, Officer Dodd was walking him toward the front of the car when he heard a "thump" sound against the vehicle; he looked down and saw the shape of a firearm near the bottom of defendant's right pant leg. Officer Dodd handcuffed defendant and secured the firearm, which was loaded. Defendant denied having a concealed weapons permit and he was arrested. Officer Hardy also testified that he had heard a "thud" and then saw his partner with the firearm. Officer Dodd placed defendant in the back of the police cruiser and verified that Spears did have a valid driver's license.

Officer Hardy told Spears that, although he confirmed he had a valid driver's license and would be allowed to get back into the Cadillac, he was going to conduct a search of the Cadillac because of the firearm found on defendant and the furtive gesture Spears made earlier at the gas station. In the center console of the Cadillac, in the area where Spears had been looking for his driver's license, Officer Hardy found a "knotted baggie" of what appeared to be crack cocaine. Officer Hardy then placed Spears under arrest for the possession of narcotics. After Spears was under arrest, Officer Hardy continued to search the vehicle and recovered additional drugs and a large amount of cash.

At the close of the hearing, the trial court articulated concerns about the legitimacy of the traffic stop, but assumed for purposes of the motion to suppress that the traffic stop was legitimate. The court then turned to the officers' actions following the actual traffic stop. The court noted that the officers permitted Spears to look for his driver's license in the vehicle, including in a bag, and "apparently were not concerned about whether or not there was a weapon, or their safety was in trouble." When Spears did not find his driver's license, the officers had Spears exit the car and he was handcuffed while they determined if he had a valid license. Because the officers were going to let Spears return to the car if he had a valid license, the court held, there was no reason for the officers to have any contact with defendant, who was a passenger in that vehicle. The court concluded that there was no legitimate concern for officer safety at that point because "there was nothing there, at that time, that would justify that." The court believed that the officers had merely

decided to detain the passenger and have him get out of the vehicle "for whatever reason." Then after defendant got out of the vehicle, they heard a "thump" and noticed what looked like a gun. But, the court concluded, there had been no reason to detain or do anything with the passenger, defendant, at that juncture; there was no officer safety issue and no reason to be concerned about defendant. It was only after the officers had defendant exit the vehicle that they discovered the gun on defendant and then decided to search the vehicle for other weapons, at which time they discovered the drugs. However, because defendant was improperly and illegally detained, the subsequent search of the vehicle was also improper and illegal. Accordingly, the trial court granted defendant's motion to suppress the evidence obtained by the illegal search. Subsequently, the charges against defendant were dismissed and this appeal followed.

The prosecution argues the trial court erred when it granted defendant's motion to suppress the evidence found during the search of the Cadillac. We agree.

We review the trial court's findings of fact in a suppression hearing for clear error, but the trial court's application of the law and "ultimate decision on a motion to suppress" is reviewed de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). We also review "de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Id*.

Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Unless there is a compelling reason to impose a different interpretation, the Michigan Constitution is construed to provide the same protection as that secured by the Fourth Amendment. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011) (citations omitted). Searches and seizures, under both the United States Constitution and the Michigan Constitution, must "be conducted reasonably, and in most cases that requires issuance of a warrant supported by probable cause, in order for the results to be admissible." *People v Toohey*, 438 Mich 265, 270; 475 NW2d 16 (1991). Generally, a search or seizure conducted without a warrant is unreasonable unless there exists both probable cause and a circumstance establishing an exception to the warrant requirement. *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999).

In order to execute a valid traffic stop, an officer must have "an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Moorman*, 331 Mich App 481, 485-486; 952 NW2d 597 (2020) (quotation marks and citation omitted). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017) (quotation marks and citation omitted). "A police officer who witnesses a civil infraction may stop and temporarily detain the offender for the purpose of issuing a written citation." *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009). The stop of a vehicle authorizes the temporary seizure of the driver and passengers, usually until the police have no further need to control the scene. *People v Corr*, 287 Mich App 499, 507; 788 NW2d 860 (2010).

A stop or arrest may not be used as a pretext to search for evidence of another offense. *People v Haney*, 192 Mich App 207, 209; 480 NW2d 322 (1991). "When police lack the reasonable suspicion necessary to support a stop and use a minor violation to stop and search a person or place for evidence of an unrelated serious crime, the stop is mere pretext." *Id*. "The

traditional response to this police tactic has been to suppress all evidence derived from a search made incident to a stop or arrest that was a mere pretext." *Id*. at 209-210.

Here, although Officers Hardy and Dodd testified about the "worried look" on defendant's face at the gas station and the furtive movement Spears made in the vehicle, the officers did not detain the Cadillac or its occupants at that time in the gas station parking lot. The decision to initiate the traffic stop was made after Officer Hardy saw Spears drive the Cadillac out of the gas station parking lot without using a turn signal. Under MCL 257.648, a driver's failure to use a turn signal is a civil infraction. The officers also saw that the Cadillac had a defective license plate lamp, which was a civil infraction under MCL 257.686(2). Thus, to the extent the trial court may have considered the traffic stop mere pretext, we disagree. Considering the two civil infractions noted by the police, the traffic stop of the Cadillac was objectively reasonable under the Fourth Amendment and was not a pretextual stop.

The trial court held, however, that the officers had no reason to order defendant out of the Cadillac because he was a passenger and the officers had no legitimate concern for their safety. We cannot agree. It was 11:30 p.m., Spears and defendant had both exhibited signs that were somewhat suspicious to the officers, and when the officers attempted to stop their vehicle— activating lights, sirens, and making audible commands—Spears kept driving instead of immediately stopping the vehicle. Although Officer Hardy allowed Spears to search inside his vehicle for his driver's license, we cannot agree with the trial court's conclusion that such action showed that the officers had no legitimate concerns for their safety, and thus, defendant should not have been removed from the vehicle. Once Spears was told to exit the vehicle—because he was driving without a valid driver's license on his person—Spears was taken to the patrol car while Officer Hardy attempted to determine whether Spears had a valid driver's license. As Officer Dodd testified, that left him alone with defendant who remained seated in the Cadillac. This situation could reasonably be considered to present a safety issue in that the officers were separated, Spears was handcuffed, and Officer Hardy was likely focused on his efforts to verify the driver's license. At that time, the officers did not know if Spears was who he said he was (because he had no identification), if Spears had a valid driver's license, if Spears had any warrants out for his arrest, if there were weapons in the vehicle, or what might happen with these individuals. Consequently, we cannot agree with the trial court that "there was nothing there, at that time, that would justify" Officer Dodd having defendant exit the vehicle.

Moreover, it is well established that "[a] police officer may order occupants to get out of a vehicle, pending the completion of a traffic stop, without violating the Fourth Amendment's proscription against unreasonable searches and seizures." *Chapo*, 283 Mich App at 368. As explained by the United States Supreme Court in *Maryland v Wilson*, 519 US 408, 413-415; 117 S Ct 882; 137 L Ed 2d 41 (1997), an officer making a traffic stop is presented with the same issue of officer safety whether the occupant of the stopped vehicle is the driver or the passenger, and thus, may order both the driver and passengers to exit the vehicle. The Court recognized that "more than one occupant of the vehicle increases the possible sources of harm to the officer," *id*. at 413, and thus, provided the following rationale:

> On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop

-4-

or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver. [*Id*. at 413-414.]

That rationale is particularly applicable in this case because, when defendant exited the vehicle, a concealed handgun was discovered on his person which was determined to be loaded. Defendant did not have a concealed weapons permit, and thus, was arrested. Consequently, after it was determined that Spears had a valid driver's license and would be allowed to reenter the Cadillac, the police officers clearly were entitled to search the vehicle, first, to look for more weapons in the interest of their safety. "[A] search of an automobile without a warrant is reasonable where the automobile legitimately has been stopped by a police officer and the police officer has probable cause to conduct the search." *People v Martinez*, 187 Mich App 160, 169; 466 NW2d 380 (1991). Sufficient probable cause to support the search existed in this case; therefore, the evidence discovered during the course of that search was admissible.

In summary, contrary to the trial court's holding, defendant was properly ordered to exit the Cadillac and, after a concealed, loaded handgun was discovered on his person, the police officers were permitted to search the Cadillac before allowing Spears to reenter the Cadillac. Evidence recovered from defendant's person and in the Cadillac was admissible. Accordingly, the trial court's decision to grant defendant's motion to suppress the evidence is reversed and this matter is remanded for reinstatement of defendant's charges.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly