*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DENNIS LEE SWENOR,

Defendant-Appellee.

FOR PUBLICATION
March 18, 2021
9:20 a.m.

No. 352786
Marquette Circuit Court
LC No. 19-000583-FH

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

FORT HOOD, P.J.

The prosecution appeals by leave granted[1] the order of the trial court granting defendant's motion to suppress evidence discovered as the result of an inventory search of defendant's personal property. On appeal, the prosecution argues that the trial court should not have granted defendant's motion because it was not required to have a written policy addressing the specific kind of inventory search conducted in this case. The prosecution further contends that suppression was an inappropriate remedy in this case. We agree that a written policy is not necessarily required for an inventory search of personal property to be constitutional, but because the prosecution did not properly preserve this issue,[2] we affirm. The trial court's decision was not plainly or obviously erroneous given the precedent available to it. Moreover, whether suppression was an appropriate remedy is an issue we generally decline to review when unpreserved.

## I. FACTUAL BACKGROUND

At the preliminary examination, Marquette County Sheriff's Office Deputy Jesse Fergin-Kuehnl testified that, on August 3, 2019, he was dispatched to a Walmart regarding "some suspicious subjects in the Walmart area." A loss-prevention associate had called about two men

---

[1] *People v Swenor*, unpublished order of the Court of Appeals, entered April 10, 2020 (Docket No. 352786).

[2] We note that the prosecution first addressed this issue in a motion for reconsideration after having been asked twice by the trial court to address it.

sitting on a bench outside of the store. The associate had stated that, several days before, one of the subjects had attempted to conceal items in the store. The associate identified defendant by name.

When Deputy Fergin-Kuehnl arrived at the store, the store's loss-prevention manager stated that the two men were on a bench by the vending machines. The manager directed Deputy Fergin-Kuehnl to defendant and another man, Keith Gronseth, and stated that he wanted the men removed from the premises. The manager also told Deputy Fergin-Kuehnl that he had previously served a no-trespassing order on defendant. Deputy Fergin-Kuehnl found the two men on a bench outside the store's west entrance, where he asked defendant and Gronseth why they were there. Both stated that they planned to return items to the store. Deputy Fergin-Kuehnl testified that "there were two full carts, Walmart carts, filled with what appeared to be personal property," and that Gronseth had a small shopping bag. When Deputy Fergin-Kuehnl asked whose property was in the carts, defendant stated that it was his property. Deputy Fergin-Kuehnl noted that the items did not appear to be stolen or purchased from the Walmart. He described the property as backpacks that were worn and did not have tags on them, a safe that appeared to have been previously pried open, a damaged subwoofer, and "multiple other property items that, uh, were definitely not new."

Deputy Fergin-Kuehnl questioned the men for approximately 10 minutes. Gronseth consented to a search of his shopping bag, but defendant did not consent to a search of his property. Thereafter, Deputy Fergin-Kuehnl made contact with the loss-prevention manager and confirmed the existence of a no-trespass order issued on defendant. On the basis of the no-trespassing order, Deputy Fergin-Kuehnl placed defendant under arrest. Deputy Fergin-Kuehnl testified that he then took defendant's property "into safekeeping while he was lodged in Marquette—." When asked whether defendant stated whether he wanted anything done with his property, Deputy Fergin-Kuehnl responded, "No, I don't believe he did." He then stated that defendant may have mentioned his girlfriend, Jacqueline Swanson. However, when Swanson arrived about 10 minutes later, she too was arrested for trespassing.[3]

Defendant's property was placed in the backseat of a patrol car and later transported to the "sally port," which was a secure location where large amounts of property were kept by police. Deputy Fergin-Kuehnl performed an inventory search of defendant's property. During the search, he found a black backpack. Inside the backpack was a small, red-and-black zipper bag, which Deputy Fergin-Kuehnl opened "to insure there was no valuable property" inside. The bag had a small, black digital scale with a white powdery residue on the weighing area. In his experience, white powdery substances found on scales were most commonly methamphetamine or cocaine. When Deputy Fergin-Kuehnl performed a methamphetamine field test kit, the scale tested positive for methamphetamine. He drafted a search warrant for entry into the safe, in which he found "a

---

[3] At the later hearing on the motion to suppress, the parties stipulated that another deputy told defendant that he could have someone else pick up his belongings as long as he allowed the police to search it first. The exact words from that deputy's body camera were, "Deputy Fergin is willing to turn your property over to someone else if you let us look through it."

syringe or two" and a clear glass smoking pipe with a gray and brown residue. He sent the pipe to the Michigan State Police crime lab for analysis.

Deputy Fergin-Kuehnl stated at defendant's preliminary examination that there was a written departmental policy for inventory searches, but he "could not recite it word-for-word." At the subsequent hearing on the motion to suppress the evidence, Deputy Fergin-Kuehnl testified that large amounts of property were generally inventoried in a secure location:

> *Q.* Why didn't you inventory it there at the Walmart?
>
> *A.* Generally, with large amounts of property, we will take that back to our office in a secured location. We don't have property forms in our patrol vehicles, so it's a lot better to do it in a controlled environment, secured environment, and take inventory of everything. . . .

The Marquette County Sheriff's Office search and seizure guidelines provide that "[a]ll searches require a warrant, unless they fall into one of the following exceptions to the warrant requirement[.]" The listed exceptions include "[s]earch based on impounding a vehicle and its inventory." The guidelines provide that an inventory search is only permitted to protect the owner's property, to protect officers from false claims, and to protect officers "from the danger of vehicle contents." The guidelines provide that officers "may not just routinely impound and inventory any vehicle." A vehicle only may be impounded if it creates a traffic hazard, if the vehicle is abandoned, or to protect the vehicle from vandalism or theft.[4] Notably, the guidelines do not mention an inventory search of personal property.[5]

Defendant was ultimately charged with felony possession of methamphetamine and misdemeanor trespass. On October 31, 2019, defendant moved to suppress the evidence—the methamphetamine—found in his personal property. According to defendant, an inventory search was required to be conducted pursuant to standardized departmental procedures that ensured that specific property was not singled out for search on the basis of improper motives. Defendant argued that he was arrested for trespass, and there was no indication that his personal property contained evidence of the same. Defendant further noted that there were people on the scene who could have taken possession of defendant's property. The prosecution did not file a written response to defendant's motion. At the motion hearing, however, the prosecution argued that the police officers had not acted impermissibly when they placed defendant's property in the patrol

---

[4] Deputy Fergin-Kuehnl agreed that the shopping carts were not obstructing the roadway.

[5] The guidelines also discuss a search incident to arrest "for a Bondable Misdemeanor." This section provides that, when a defendant is arrested for a bondable misdemeanor, officers may search the defendant, the passenger compartment of defendant's vehicle, and the passenger when the defendant is arrested, and "[t]he search should be completed on the street at the scene." The arrested person should be informed of his or her right to post bond, and "[i]f the person is not informed of his/her right to post bond, any subsequent search at the station may be illegal."

car, and that an impoundment was not unconstitutional solely because the police could have made alternative arrangements.

The trial court asked the prosecution about whether it was necessary for police officers to have a written policy to conduct an inventory search:

> THE COURT: . . . Most of the law about inventory searches talks about there—it being, you know, pursuant to a policy. Is it the People's position that a specific personal property inventory search policy isn't required, that it's constitutional irrespective of written policy?
>
> THE PROSECUTION: As in to—to the manner of how they do the search?
>
> THE COURT: The ability to do the search all. I mean, I think most of the case law in the area, and I—you know, just from looking at the briefs, too, makes statements like, if it's done pursuant to departmental regulations, and so forth.
>
> THE PROSECUTION: Correct.
>
> THE COURT: And it's not clear to me whether there are any departmental regulations on personal property versus vehicles. Because this is kind of written in a vehicle context, I don't know whether there is or not. But the one that's offered—
>
> THE PROSECUTION: Right.
>
> THE COURT: —seems like it might be vehicle specific.
>
> THE PROSECUTION: Well, and—though the idea behind it might be vehicle specific, I think this is a sufficient policy to comply with that because it talks about the reasons you're doing it . . . .

The prosecutor later argued, "I think the best practice is that you're going to do it pursuant to a policy because I think the history behind the need for an inventory search is for the reasons that the Marquette Sheriff's Office has cited, but it's also to just avoid just using it as a shield to go look for evidence." The prosecutor stated that, without a written policy, practices over time might focus on specific individuals or types of arrests, which would violate the Fourth Amendment. The prosecutor then stated, "I think the idea that you have this policy is a supplement to the actual authority to it [sic], but it's not the basis from which the authority flows."

Following arguments on the motion, the trial court noted that it had reviewed *People v Toohey*, 438 Mich 265, 272; 475 NW2d 16 (1991). The court noted, "The defense appeared to argue that the inventory search policy regarding vehicles is equally applicable to the impoundment and inventory of personal property." It directed counsel to further brief the issue, and to specifically answer whether the trial court could apply the existing inventory search policy to a search of personal property. It asked in the alternative whether a separate policy applied to personal property, or whether there was a separate legal justification for the search.

In defendant's supplemental brief, defendant argued that the trial court could not apply the sheriff's office policy to defendant's case because the policy only applied to vehicles. Defendant also stated that there did not appear to be a separate policy that applied to searches of personal property. Defendant further argued that police officers did not search his property in good faith because he had refused to consent to a search, defendant's personal property did not pose a threat to public safety, and defendant had made reasonable efforts to secure his property when he was arrested.

In the prosecution's supplemental brief, the prosecution argued that the reasoning in *Toohey* applied to searches of personal property as well as vehicles. The prosecution asserted that *Toohey* relied on an unarticulated but established principle that police have a duty to conduct an inventory search of an arrested person's possessions. The prosecution further argued that the police officers in this case searched defendant's property "in accordance with their policies." The prosecution noted, "The Marquette County Sheriff's Office does have a separate policy that applies to personal property," and attached copies of the policy to its brief. The policies the prosecution attached provided that an inmate arriving at a booking facility would be patted down, and then the inmate would remove all personal belongings and place them in a bin. The arresting officer would inventory the inmate's possessions and record the results in the computer. An inmate arriving at the jail would be searched to prevent contraband from entering the facility. All personal property would be removed and placed in a property bag. The policy stated that inmates would not be allowed to access their personal belongings during the custodial inventory search.

Upon reviewing the briefs, the trial court issued an opinion and order noting that inventory searches without a warrant are permitted only when they are conducted pursuant to police caretaking functions. The court held that inventory searches were required to be conducted in accordance with a departmental policy or established departmental procedures. It determined that an officer's use of discretion in the ability of the officer to dispose of the property by alternative means did not render a search invalid. On that basis, the court rejected defendant's argument that the officers' ability to deliver his possessions to his friend or girlfriend affected the analysis.

However, the trial court determined that the written office policy on search and seizure did not address impoundment or search of personal property; it only addressed procedures concerning stop and frisk or the impoundment and inventory search of a vehicle. The court agreed that, had the officers left defendant's property outside the Walmart, it could have been damaged or taken. However, the written policies still did not address impounding personal property. With that in mind, the trial court held that the seizure did not satisfy "the inventory exception discussed in *Toohey*, [438 Mich 265]," and it could not find authority to extrapolate the sheriff office's existing policies to the present circumstance. It concluded that the search did not satisfy the requirements of the inventory exception, and it granted defendant's motion to suppress the evidence.

In a motion for reconsideration, the prosecution reiterated that its written property management guidelines covered the circumstances of this case. In a footnote, the prosecution also argued that, while its written guidelines addressed defendant's circumstances, it was not required to provide a written policy. The trial court denied the prosecution's motion. It found that, although the police officers had acted in good faith to protect defendant's personal items, the "lack of a policy justifying the impoundment or seizure of property fails to satisfy the standard set forth in

*Toohey*." The court reasoned that "the case law requires a written procedure to justify both the impoundment and the search." This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

Highly relevant to the outcome of this case, we conclude that the prosecution's arguments on appeal are not preserved. "Michigan has long recognized the importance of preserving issues for appellate review." *People v Carines*, 460 Mich 750, 762; 597 NW2d 130 (1999). Preservation requirements apply to both constitutional and nonconstitutional issues. *Id*. at 762-763. To preserve an issue, a party must raise it before the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). A challenge to one ground before the trial court is not sufficient to preserve a challenge on another ground on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). When a party raises a separate argument on appeal than the party raised before the trial court, the party must satisfy the standard for plain-error review. *Id*. at 312.

The prosecution did not adequately raise its argument that the department was not required to conduct its inventory search pursuant to a written policy below. An issue is not preserved if it is raised for the first time in a motion for reconsideration. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). When directly asked whether a written policy was required for police officers to conduct a search, the prosecution sidestepped the issue. It then argued that the written policy in this case was sufficient even though it was specific to vehicles. The prosecution argued that it was "best practice" to conduct an inventory search pursuant to a policy because conducting searches without a written policy might result in unconstitutional searches, and it stated that, without a written policy, practices over time might focus on specific individuals or types of arrests, which would violate the Fourth Amendment. It then argued that the policy was "a supplement to the actual authority to it [sic], but it's not the basis from which the authority flows."[6] In response to the trial court's request for supplemental briefing, the prosecution argued that *Toohey* applied to this case and that its written policies actually covered defendant's circumstances. Ultimately, the prosecution argued in its motion for reconsideration that, even if the department's policies did not address defendant's specific search, a written policy was not required. Because the prosecution did not address this issue in a timely fashion, we conclude that the issue is unpreserved.[7] Additionally, the prosecution's argument that

---

[6] While we note that this statement suggested the prosecution's position that a written policy was not required, it was not adequate, particularly in light of the context in which it was made, to fully raise the issue. The statement was made in support of the idea that the department's written policy applied to the circumstances of the case despite explicitly targeting vehicle searches.

[7] This Court applied similar reasoning in *People v Wilson*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 2018 (Docket No. 340376). Unpublished authorities are not binding on this Court but may be considered as persuasive authority. *People v Daniels*, 311 Mich App 257, 268 n 4; 874 NW2d 732 (2015). In *Wilson*, unpub op at 4, the prosecution was given several opportunities to raise an issue but did not take advantage of those opportunities and only raised the issue in its motion for reconsideration. This Court held that the issue was unpreserved. *Id*. In this case, the trial court specifically asked the prosecution questions about this

suppression was an inappropriate remedy is not preserved because the prosecution did not raise this issue during its arguments before the trial court.

This Court reviews de novo the application of constitutional standards regarding search and seizure and reviews for clear error the trial court's findings of fact supporting a motion to suppress. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court reviews de novo the application of the exclusionary rule to a constitutional violation. *People v Frazier*, 478 Mich 231, 240; 733 NW2d 713 (2007). This Court reviews unpreserved constitutional issues for plain error affecting a party's substantial rights. *Carines*, 460 Mich at 763. An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*. An error is plain when it is contrary to well-settled law. See *People v Vaughn*, 491 Mich 642, 665; 821 NW2d 288 (2012).

## III. ANALYSIS

The prosecution first argues that it was not required to have a written policy addressing inventory searches of personal property. We conclude that the trial court's ruling regarding this inventory search was not plainly erroneous. The prosecution further contends that suppression was not an appropriate remedy in this case because the police officers were acting in good faith. However, we generally decline to overturn a suppression decision on the basis that suppression was not the appropriate remedy where the prosecution did not raise the issue before the trial court. Accordingly, we affirm.

## A. WHETHER A WRITTEN POLICY WAS REQUIRED

Both the United States and Michigan Constitutions "guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). See US Const, Am IV; Const 1963, art 1, § 11. To comply with this requirement, police officers generally must have a warrant to conduct a search. *Kazmierczak*, 461 Mich at 417. "In order to show that a search was legal, the police must show either that they had a warrant or that their conduct fell under one of the narrow, specific exceptions to the warrant requirement." *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000). An inventory search is an exception to the warrant requirement. *People v Toohey*, 438 Mich 265, 271; 475 NW2d 16 (1991).

When police officers conduct a search without a warrant, the standard for determining constitutionality is whether the search was reasonable. *Toohey*, 438 Mich at 272. In *Illinois v Lafayette*, 462 US 640, 641; 103 S Ct 2605; 77 L Ed 2d 65 (1983), the United States Supreme

---

issue at the motion hearing and requested supplemental briefing on the issue, but the prosecution consistently argued that its written policies actually covered defendant's circumstance. It first argued that a written policy was not required in a footnote in its motion for reconsideration. Similar to *Wilson*, the prosecution was given several opportunities to raise the issue but did not do so in a timely fashion.

Court considered a case in which the defendant was arrested for disturbing the peace. At the time, the defendant possessed a shoulder bag. *Id*. at 641-642. When a police officer inventoried the contents of the bag, he found amphetamine pills. *Id*. at 642. The police officer testified that it was standard procedure to inventory everything in the possession of an arrested person. *Id*. The trial court ruled, however, that the search was invalid because it was not a search incident to arrest, and the Illinois Appellate Court affirmed on that same basis. *Id*. The appellate court also held that the search was not a valid inventory search because it was not a search of an automobile, and because the defendant had a greater privacy interest in his shoulder bag than he would have had in an automobile. *Id*. at 642-643.

The United States Supreme Court reversed, holding that the search was a reasonable inventory search of the property that the arrested person had in his possession at the time of arrest. *Id*. at 648. The Court reasoned, "it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Id*. at 646. Inventory searches prevent police from stealing the arrested person's property, deter false claims that the police have done so, and protect arrested persons and the police from dangerous items such as bombs or weapons. *Id*. The United States Supreme Court stated that "standardized inventory procedures are appropriate to serve legitimate governmental interests." *Id*. at 647.[8]

We have also held before that it is appropriate for police officers to open closed containers during inventory searches. This Court is not bound to follow a rule of law announced by this Court before November 1, 1990, but it gives such decisions greater precedential effect than unpublished decisions. *People v Bensch*, 328 Mich App 1, 7 n 6; 935 NW2d 382 (2019). In *People v Guy*, 118 Mich App 99, 101; 324 NW2d 547 (1982), the defendant was arrested on a misdemeanor charge. At the police station, a police officer removed his briefcase, opened it, and found a cassette recorder inside. *Id*. at 102. The police officer was later informed that a cassette recorder was missing from a house that the defendant had entered. *Id*. The officer testified that the briefcase was opened and inspected pursuant to routine procedures to prevent claims of theft or damage to property. *Id*. The defendant argued that the officer should not have opened his briefcase and inspected its contents. *Id*. This Court held that "the briefcase was opened and its contents inspected pursuant to a valid inventory search procedure." *Id*. This Court distinguished a case holding that a search of a briefcase was improper when it was not conducted pursuant to a standard procedure. *Id*. See *People v Miller*, 110 Mich App 270; 312 NW2d 225 (1981), vacated by *Michigan v Miller*, 459 US 1167 (1983). This Court reasoned that opening the defendant's briefcase was consistent with the basic purposes of an inventory search, which were to protect the property while it was held in police custody, to protect the police against claims over lost and stolen property, and to protect the police from potential danger. *Guy*, 118 Mich App at 103.

In this case, defendant possessed two shopping carts filled with personal property at the time of his arrest. Deputy Fergin-Kuehnl testified that the personal property was taken into police possession following defendant's arrest for "safekeeping." The property included backpacks, a

---

[8] The Court also rejected an argument that the police could have met these interests by less intrusive means, such as by securing the bag in a sealed plastic bag or box before placing it in a locker. *Lafayette*, 462 US at 647.

safe, and other used property. The property was ultimately taken to a secure location, where Deputy Fergin-Kuehnl performed an inventory search. He opened the backpack, which contained a black-and-red zipper bag that he also opened. The zipper bag contained a scale that tested positive for methamphetamine. While no binding Michigan caselaw explicitly holds that it is acceptable for police officers to conduct an inventory search of personal property in the possession of a person who is arrested, federal caselaw and nonbinding Michigan caselaw support that police officers may inventory the personal property of a person who is arrested and may open containers when doing so because such searches serve legitimate government interests.

Standardized inventory searches, specifically, serve the legitimate governmental interests of preventing police from stealing the arrested person's property, deterring false claims of theft, and protecting people from possibly dangerous contents. *Layfayette*, 462 US at 646-647; *Guy*, 118 Mich App at 102-103. We hold that, in order to establish that an inventory search is reasonable, the prosecution must establish that an inventory-search policy existed, all police officers were required to follow the policy, the officers actually complied with the policy, and the search was not conducted in bad faith. Whether the policy is or is not in writing should not itself be dispositive of the constitutional question.

That having been said, we cannot conclude that the trial court's decision was clearly or obviously wrong. In *Toohey*, 438 Mich at 272, the defendant asserted that police officers did not follow their own departmental regulations when deciding whether to impound his vehicle. The Court stated that "the critical factors which the court must evaluate are whether the police acted in accordance with departmental regulations when conducting the inventory search and that it was not done for criminal investigation." *Id*. at 277. The *Toohey* Court stated that it was sufficient for courts to determine the constitutionality of police conduct by determining whether police officer "acted in according with standardized departmental procedures when conducting an inventory search . . . ." *Id*. at 279. The Court later reiterated, "To be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation." *Id*. at 284.

The *Toohey* Court considered the language of an Ann Arbor ordinance to determine whether the police officers' search was constitutionally valid. *Id*. at 285-286. Addressing the defendant's argument that the policy left the police officers with too much discretion, the Court disagreed, stating, "The critical factor in determining whether too much discretion has been granted to police officers regarding impoundment of an arrested person's automobile is the ability for arbitrary searches and seizures to be conducted by the police officers." *Id*. at 287. Under the facts and circumstances of the case, the impoundment of the vehicle was reasonable to protect the unattended vehicle from possible theft or vandalism. *Id*. at 290-291.

In this case, the trial court held that the search did not satisfy the requirements of the inventory exception because the sheriff's office policies did not address the impoundment of personal property. It held that the seizure did not satisfy *Toohey*'s inventory exception, and it reasoned that "the case law requires a written procedure to justify both the impoundment and the search." The *Toohey* Court's focus on the written policy in that case and its analysis of that policy's language could lead a reasonable court to conclude that a written policy was, in fact, a requirement.

An error is plain when it is clear or obvious, *Carines*, 460 Mich at 763, such as when it is contrary to well-settled law, see *Vaughn*, 491 Mich at 665. Regardless of the correctness of the trial court's holding that the search was invalid because police officers did not conduct it pursuant to a written policy, its decision was not plainly or obviously wrong because no binding caselaw has directly addressed whether a written policy was required.[9]

### B. WHETHER SUPPRESSION WAS AN APPROPRIATE REMEDY

The prosecution also argues for the first time on appeal that the trial court should not have granted defendant's motion to suppress the evidence because suppression was an inappropriate remedy. The prosecution notes that there was no evidence that Deputy Fergin-Kuehnl engaged in deliberate misconduct. Again, this issue is unpreserved, and on that basis, we decline to grant the relief the prosecution seeks.

The exclusionary rule is a prudential doctrine whose purpose is to deter future Fourth-Amendment violations. *Davis v United States*, 564 US 229, 236; 131 S Ct 2419; 180 L Ed 2d 285 (2011); *People v Hill*, 299 Mich App 402, 412; 829 NW2d 908 (2013). "[A]pplication of the exclusionary rule is inappropriate in the absence of governmental misconduct." *Frazier*, 478 Mich at 250. However, this Court will decline to review this issue when the prosecution has forfeited the argument. *Id*. at 240-241.

In this case, the prosecution did not argue before the trial court that the exclusionary rule should not apply. To the extent that the prosecution argued that the police officers had not behaved inappropriately, it was part of the prosecution's argument that the officers were protecting defendant's property and protecting themselves from false claims of loss. Because the prosecution did not preserve this claim of error, we decline to review it. See *id*.

Affirmed.

/s/ Karen M. Fort Hood

---

[9] As an aside, we note the prosecution's argument that the testimony of Deputy Fergin-Kuehnl established that an unwritten policy governed the police officers' conduct in this case. The trial court did not resolve this factual issue, and given our conclusion that the trial court did not plainly err for the purpose of our review, we decline to address it on appeal.