PEOPLE v RUSSELL

Docket No. 104135. Submitted November 15, 1988, at Lansing. Decided January 17, 1989.

An automobile belonging to Kimberly Marie Russell was discovered by the police parked on the lawn and underneath some large bushes at a private residence. The automobile matched the description of an automobile which, moments before, had been involved in a high-speed chase by the police. The car was unlocked, the engine was hot, and, although there was no one in the vicinity of the car, a purse was sitting on the front seat. After contacting the police dispatcher and learning that the computer used for determining ownership of vehicles was not operating at that time, the police officer entered the car and looked through the purse for a driver's license or vehicle registration. While looking in the purse, the officer saw what turned out to be cocaine. An on-the-scene inventory of the vehicle was conducted and the vehicle was impounded. The inventory turned up a suitcase with drug paraphernalia in it in the hatchback area of the vehicle. Russell returned to the scene and was arrested. She was bound over for trial in Oakland Circuit Court on one charge of possession of cocaine in a mixture of less than fifty grams. The court, John N. O'Brien, J., suppressed the evidence of the cocaine seized from the automobile and dismissed the charge against defendant, finding that, while the police officer acted reasonably in searching the car without first obtaining a search warrant, his conduct was legally impermissible. The people appealed.

The Court of Appeals held:

1. The trial court clearly erred in ruling that it was legally impermissible for the officer to enter the vehicle and search the purse, which was in plain view on the front seat, for the purpose of establishing ownership of the vehicle. The officer

REFERENCES

Am Jur 2d, Searches and Seizures §§ 41 et seq., 57, 88, 99.

Lawfulness of "inventory search" of motor vehicle impounded by police. 48 ALR3d 537.

Validity of seizure under Fouth Amendment "plain view" doctrine —Supreme Court cases. 75 L Ed 2d 1018.

had probable cause to believe that the vehicle was the instrumentality of the crime he observed and, hence, his entry into the vehicle to establish its ownership as part of his investigation was a lawful, reasonable action.

2. The court also clearly erred in suppressing evidence of the suitcase found during the inventory. The suitcase was found during the performance of a community caretaking function. The taking of the inventory as a prerequisite to the automobile's actual seizure and impoundment was a lawful, reasonable action.

Reversed.

1. SEARCHES AND SEIZURES — AUTOMOBILES.

A police officer, faced with a situation where a vehicle was driven in an evasive manner after he turned on his overhead lights and siren in an effort to stop the vehicle for speeding and then finding a vehicle matching the description of the subject vehicle parked on a lawn under some bushes, unlocked, with a purse on the front seat, the engine warm, and no one in the vicinity, had probable cause to believe that the vehicle was the instrumentality of the crime he observed and his entry into the vehicle to establish its ownership, after unsuccessfully attempting to establish ownership through the police computer, was a lawful, reasonable action which satisfied the Fourth Amendment's requirement of reasonableness for a search of an automobile without a warrant; the inadvertent discovery of cocaine in the purse was not the product of an illegal search and seizure and evidence of the cocaine should not have been suppressed in a prosecution of the owner of the automobile for possession of cocaine.

2. CRIMINAL LAW — AUTOMOBILES — SEARCHES AND SEIZURES — IMPOUNDMENT OF VEHICLES — INVENTORY.

The seizure and impoundment of a vehicle which a police officer had probable cause to believe was used to flee and evade him when he attempted to stop the vehicle for speeding and the driver of which was unknown was a lawful act and a subsequent inventory of the contents of the automobile was also a lawful, reasonable action, a community caretaking function; a suitcase containing drug paraphernalia which was discovered during the inventory should not have been suppressed in a prosecution of the owner of the automobile for possession of cocaine found in the automobile.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,*

Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Sharon A. Payne,* for defendant on appeal.

Before: SHEPHERD, P.J., and GRIBBS and G. S. ALLEN,* JJ.

SHEPHERD, P.J. Defendant was bound over to the Oakland Circuit Court on one count of possession of cocaine in a mixture of less than fifty grams, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv). Defendant then moved to suppress evidence of the cocaine seized from her automobile. The trial court granted the motion and dismissed the case. The prosecutor appeals as of right. We reverse.

The sole witness at the August, 1987, suppression hearing was Deputy Gary Wood of the Oakland County Sheriff's Department. Deputy Wood testified that his seizure of the cocaine stemmed from a brief high speed car chase on November 27, 1986. Deputy Wood was northbound on Commerce Road when he saw a black Toyota Celica moving southbound at seventy-seven miles per hour in a forty mile per hour speed zone. Deputy Wood made a U-turn, activated his overhead lights and siren, and began his pursuit of the Toyota. The vehicle continued southbound on Commerce Road, but disappeared after it went over a hill. Deputy Wood concluded that the vehicle did not have time to reach the next intersection, so he checked a private driveway leading up to a small business and a private house on the west side of the road.

Deputy Wood found skid marks and tire tracks that went across the lawn and led up to a black

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Toyota Celica parked underneath some large bushes. The keys to the vehicle were gone, but the engine felt hot and a purse was on the front seat. Deputy Wood checked the area and the nearby house and business, but did not locate anyone. He then returned to the vehicle in an effort to establish its ownership. Deputy Wood was unable to run a radio check on the vehicle's plates to establish registered ownership at that time because the computer used for that purpose was "down," so he entered the unlocked vehicle to look for a driver's license or vehicle registration. Both of these items, which identified defendant, were found in the purse. While checking the purse for these items, Deputy Wood also saw a brown vial and a "nickel bag" containing what he believed to be cocaine.

Deputy Wood then radioed his dispatcher to see if a telephone number could be located based on the license and registration information. The dispatcher reached defendant's mother.

Defendant's boyfriend, who was found in the area by another officer, was brought to Deputy Wood's location. He informed Deputy Wood that defendant had driven off in the vehicle after they had a fight. Defendant arrived shortly thereafter, admitted that the vehicle belonged to her and stated that she was sorry for running.

The vehicle was impounded after Deputy Wood did an on-the-scene inventory in accordance with departmental policy. Deputy Wood testified that he requested a tow truck to impound the vehicle as soon as he found nobody in the vehicle and that his purpose in ordering the impoundment was twofold: (1) to determine who the vehicle belonged to and (2) because the vehicle was used to flee from him and, pending investigation, this itself was a crime. The inventory was taken before defendant's arrival. A suitcase containing narcotics parapher-

nalia, including a paper packet like the one found in the purse, was discovered in the hatchback area.

On the basis of Deputy Wood's testimony, the trial court ruled that his conduct was perfectly reasonable but legally impermissible. With regard to the cocaine found in the purse, the court indicated that Deputy Wood did not have a legal right to enter the vehicle for the purpose of identifying the registered owner. The court also characterized the prosecutor's argument that the vehicle was abandoned as a "guess" because Deputy Wood did not know whether the owner of the vehicle had permission to park the vehicle where it was parked. With regard to the suitcase, the court ruled that Deputy Wood could not lawfully impound a vehicle where the underlying offense was fleeing and eluding a police officer.

We review the court's ruling at a suppression hearing under the clearly erroneous standard. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). The court's decision will be affirmed unless, upon our review of the record, we possess a definite and firm conviction that a mistake was made. *Id.,* p 449. In the present case, we have a definite and firm conviction that a mistake was made.

Relying on *Washington v Orcutt,* 22 Wash App 730; 591 P2d 872 (1979), the prosecutor argues that the search of the vehicle without a warrant to determine its ownership was a lawful and reasonable action as part of the "community caretaking function" of police officers. *Orcutt* involved a defendant who drove evasively in the presence of a police officer. The police officer became suspicious of the defendant's conduct, but was unable to run a check on the vehicle's plates because the computer used for this purpose was not available. The officer followed the vehicle to a grassy area behind

a clinic which was not used for parking. By the time the officer reached the vehicle in an effort to contact the defendant, the defendant was no longer in it. While that officer proceeded to search the area for the defendant, another officer arrived at the scene and, upon noticing the vehicle door ajar and a large quantity of personal property piled up on the seats, entered the vehicle to look for some vehicle identification. In the course thereof, he observed marijuana in the glove compartment. Prior to trial, the defendant challenged the constitutionality of the intrusion into the vehicle and the Washington court held that, under all the circumstances of the case, the governmental interest in asserting the vehicle's ownership outweighed the limited invasion of privacy and qualified as an appropriate community caretaking exception to the search warrant requirement. While we do not agree with the Washington court's characterization of the intrusion as a community caretaking function, we agree with the rationale of the Washington court to the extent that it holds that such an intrusion without a warrant may be reasonable and, hence, valid.

We begin our analysis with the federal standard applicable to searches of automobiles without warrants. The very nature of the automobile and the pervasive governmental regulatory scheme that it is subject to has traditionally subjected the automobile to a different standard of reasonableness than has been applied to other effects, such as a dwelling. *Cady v Dombrowski,* 413 US 433, 439-440; 93 S Ct 2523; 37 L Ed 2d 706 (1973), and see *People v Smith,* 162 Mich App 534; 413 NW2d 42 (1987) (holding that an inspection of a vehicle's identification number is not a "search" and may be properly undertaken when there is a valid reason, i.e., probable cause to believe that the

vehicle contains stolen parts). The ultimate standard under the Fourth Amendment is one of reasonableness, which is determined by looking to all the facts and circumstances of the case and the information possessed by the police officer at the time of the search or seizure. See *Cady, supra,* pp 439-440; *People v White,* 392 Mich 404, 418; 221 NW2d 357 (1974), cert den 420 US 912 (1975). The related concept of probable cause is peculiarly related to criminal investigations. *Colorado v Bertine,* 479 US 367; 107 S Ct 738; 93 L Ed 2d 739 (1987). Hence, a search of an automobile has been upheld under the automobile exception to the warrant requirement where there has been probable cause to believe that evidence of a crime will be found in a lawfully seized automobile. *People v Anderson,* 166 Mich App 455; 421 NW2d 200 (1988).

Nevertheless, this exception as applied to criminal investigations is distinguishable from the "community caretaking function" relied on by the prosecutor in this case inasmuch as the latter function has been described as being "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady, supra,* p 441. Typically, the validity of a search conducted as part of the community caretaking function has been upheld where a vehicle was lawfully impounded and the inventory taken pursuant to a reasonable, routine administrative police policy, but has been struck down where the search was a mere pretext for a criminal investigation. *Colorado v Bertine, supra; People v Castle,* 126 Mich App 203, 207-208; 337 NW2d 48 (1983), lv den 419 Mich 876 (1984); and see the plurality opinion of *People v Krezen,* 427 Mich 681; 397 NW2d 803 (1986). Further, it has been the actual act of taking inventory which has

been regarded as the community caretaking function, while the authority of the police to take the automobile into police custody has been resolved as a separate matter. See Justice LEVIN's dissenting opinion in *Krezen, supra,* pp 708-711 for a summary of the decisions in other jurisdictions which have addressed the authority needed to impound a vehicle. (*Krezen* itself is distinguishable from the instant case in that it involved the impoundment of a vehicle incidental to the arrest of the owner where the impoundment itself occurred within the context of a standard departmental policy. In the present case, the only departmental policy referred to at the suppression hearing pertained to the taking of the inventory.)

Here, Deputy Wood was faced with a situation where a vehicle was driven evasively after he turned on his overhead lights and siren in an effort to stop the vehicle for speeding. Such evasive action with a vehicle in the face of a lawful police stop constitutes a misdemeanor offense punishable by imprisonment or a fine, MCL 257.602a; MSA 9.2302(1) and MCL 750.479a; MSA 28.747(1), and the instrumentality of the crime is the vehicle itself. Deputy Wood's testimony at the suppression hearing clearly indicates that he wanted to determine who it was that fled from him, which he recognized was a crime pending further investigation. The question of who owned the vehicle related to this investigation. Regardless of whether the unoccupied vehicle found by Deputy Wood moments after the chase was actually abandoned or merely hidden by the driver with an intent to return at a later time, Deputy Wood's conclusion that it was the same vehicle he saw fleeing from him was a reasonable one and his entry into the unlocked vehicle as part of his investigation for the limited purpose of establishing the identity of

the owner was a reasonable intrusion. The fact that a less intrusive means of investigating the crime may have existed does not necessarily negate the reasonableness of his conduct. See *Colorado v Bertine, supra; Krezen, supra,* p 689. Since a mobile automobile was involved and the driver's evasive action was observed by Deputy Wood just moments earlier, we see no reason why Deputy Wood should have delayed his investigation or, as argued by defendant, rechecked and waited for the availability of the computer to determine who owned the vehicle. Deputy Wood had probable cause to believe that the vehicle was the instrumentality of the crime he observed and, hence, his entry into the vehicle to establish its ownership as part of his investigation was a lawful, reasonable action. See *Anderson, supra,* p 480.

For these reasons, we find that the trial court clearly erred in ruling that it was legally impermissible for Deputy Wood to enter the vehicle and search the purse, which was in plain view on the front seat, for the purpose of establishing ownership of the vehicle. Since the intrusion was reasonable in view of all the circumstances existing at the time of the entry, the limited intrusion satisfied the Fourth Amendment's requirement of reasonableness for a search of an automobile without a warrant. Pursuant to *Krezen, supra,* p 690, we also conclude that the search satisfied the reasonableness requirement of the Michigan Constitution, Const 1963, art 1, § 11, which is not to be construed to bar evidence of a narcotic drug seized outside the curtilage of any dwelling house in this state.

Even if we were to hold that Deputy Wood should have used some other means of establishing the ownership of the vehicle, we do not believe that Deputy Wood could have left the purse on the

front seat of the vehicle. The vehicle was left in an unusual place on private property after being used to flee from a police officer. Deputy Wood could find nobody in the area at the time of the search and there was nothing to indicate that the vehicle belonged where it was parked. It would have been far more reasonable to conclude that it had been parked by the bushes in an effort to hide it. Under such circumstances, a removal of the purse from the unlocked vehicle and a protective search of that purse before its return to defendant would have been reasonable and inevitably led to the discovery of the cocaine. See the lead opinion of Justice BOYLE and the concurring opinion of Justice WILLIAMS in *Krezen,* pp 688, n 3, 698.

With regard to the suitcase found during the inventory, we likewise find that the trial court clearly erred in suppressing this evidence based upon its determination that the vehicle should not have been impounded. Unlike the purse, this evidence was discovered during the performance of a "community caretaking function." *Krezen, supra.* Deputy Wood testified that he took the inventory because he decided to have the vehicle impounded in connection with the fleeing-and-eluding crime and the investigation related thereto. According to departmental policy, the inventory was required before the vehicle was actually impounded and towed away. Thus, the crucial question we must decide is whether Deputy Wood could lawfully impound the vehicle based upon the information he possessed at the time he conducted the inventory and found the narcotics paraphernalia in the suitcase, and not whether the subsequent seizure and towing of the vehicle was authorized. *Krezen, supra; White, supra,* p 418. In other words, if the narcotics paraphernalia was properly seized during the inventory, it should not be suppressed.

At the time of the inventory, Deputy Wood had probable cause to believe that the vehicle was used to evade him and had observed that nobody was in the area. He knew that defendant was the registered owner, but he had not yet had any contact with defendant and the question of who left the vehicle in the bushes and then ran away was still under investigation. Under these circumstances, and because Deputy Wood had probable cause to believe that the vehicle itself was the instrumentality of the crime he observed, his action in taking the inventory as the prerequisite to its actual seizure and impoundment was a lawful, reasonable action. *Anderson, supra,* p 479; and see *Krezen, supra,* p 708, n 24. Accordingly, evidence of the narcotics paraphernalia seized during the inventory search should not have been suppressed.

In summary, we agree with the trial court's determination that Deputy Wood's actions were perfectly reasonable, but find that the trial court erred in concluding that his actions were legally impermissible.

Reversed.