*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

UNPUBLISHED
June 24, 2021

v

JASON WAYNE STRAMPEL,

       Defendant-Appellant.

Nos. 352557; 352558
Berrien Circuit Court
LC No. 2019-001911-FH;
          2019-001913-FH

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction for two counts of operating while intoxicated causing serious injury (OWI-injury), MCL 257.625(5)(a); four counts of operating while intoxicated with children in the car, MCL 257.625(7)(a); and possession of methamphetamine, MCL 333.7403(2)(b). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 23 to 240 months' imprisonment for the possession of methamphetamine conviction, 72 to 228 months' imprisonment for each count of OWI-injury, and 365 days' imprisonment for each count of operating while intoxicated with children in the car. We affirm.

This case arises out of defendant's use of methamphetamine and marijuana before driving a car with four children inside, and then pulling out onto a highway in front of another car, causing the other car to collide with defendant's car. The crash injured the three people in the other car.

Firefighters and police responded to the scene of the crash, and on appeal, defendant first argues that statements he made to officers at the scene and resulting evidence that the authorities collected should have been suppressed because the officers that questioned defendant did not read him *Miranda*[1] warnings. We agree that the trial court should have suppressed defendant's statements to Deputy Justin Goff after Deputy Goff handcuffed him. However, defendant's statements to Deputy Goff before he was handcuffed, methamphetamine and marijuana found in

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

his pocket, and his statements to Michigan State Police Trooper Kevin Lee were admissible, and defendant is not entitled to a new trial.

We review for clear error a trial court's factual findings underlying its decision on a motion to suppress, but review de novo "the application of a constitutional standard to uncontested facts." *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

Statements that a person makes during custodial interrogation are inadmissible unless the person voluntarily, knowingly, and intelligently waives his or her Fifth Amendments rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). But *Miranda* warnings are only required for custodial interrogations—if an interrogation is noncustodial, then *Miranda* warnings are not required. *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013). "[A] custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). Whether a defendant was "in custody" is an objective determination based on the totality of the circumstances—considerations of the questioning officers' unannounced views or the defendant's subjective beliefs are improper. *Yarborough v Alvarado*, 541 US 652, 662-663; 124 S Ct 2140; 158 L Ed 2d 938 (2004).

Generally, a traffic or investigatory stop does not place the briefly detained person in custody necessitating *Miranda* warnings. *Berkemer v McCarty*, 468 US 420, 439; 440; 104 S Ct 3138; 82 L Ed 2d 317 (1984). This is because a police officer may detain a person whom the officer suspects has "committed, is committing, or is about to commit a crime" for a period sufficient to ask reasonable questions regarding the violation of law and may extend the detention if new circumstances are revealed in order to resolve those suspicions. *Id*. See also *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). Thus, general on-the-scene questions to investigate the facts of a crime do not, by themselves, implicate *Miranda*. *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002). Likewise, *Miranda* warnings are not required simply because someone is the focus of an investigation. *Oregon v Mathiason*, 429 US 492, 495; 97 S Ct 711; 50 L Ed 2d 714 (1977); *Hill*, 429 Mich at 396. The erroneous admission of a confession is subject to harmless-error review. *Milton v Wainwright*, 407 US 371, 372; 92 S Ct 2174; 33 L Ed 2d 1 (1972); *People v McRunels*, 237 Mich App 168, 184-185; 603 NW2d 95 (1999).

Before trial, defendant moved to suppress his statements on the basis that Deputy Goff had not advised him of his *Miranda* rights. The trial court held a hearing and asked defendant to supplement his motion in order to expand on his argument, and then the trial court would hold a *Walker*[2] hearing. The trial court noted, however, that defendant was not in custody simply because he had to remain at the scene of the accident, explaining that custody required more than presence. Defendant thereafter filed a supplemental brief as requested by the court, but the brief focused on defendant's Fourth Amendment claim that the officers had conducted an unreasonable search of him. The court held a hearing to address the issues identified in defendant's supplemental brief, but because that brief did not address the *Miranda* issue, the trial court did not address the issue at

---

[2] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965)

the hearing. The *Miranda* issue was ultimately resolved before the second day of trial. At that time, the court found that *Miranda* did not apply to the "prompt on-scene" questions that Deputy Goff asked defendant or any spontaneous statements defendant made because defendant was not "in custody" at the time.

Although defendant argues that Deputy Goff had probable cause to arrest defendant at the time he found a pill bottle smelling of marijuana in defendant's car and, therefore, should have advised defendant of his *Miranda* rights at that point, it is well established that a person is not "in custody" for purposes of *Miranda* simply because he or she is under investigation. See *Berkemer*, 468 US at 441-442; *Hill*, 429 Mich at 397. Even if Deputy Goff planned to arrest defendant after he found the pill bottle as alleged by defendant, the deputy did not tell defendant of that intent, so it does not affect whether defendant was "in custody." *Yarborough*, 541 US at 663. Further, Deputy Goff testified that the pill bottle was not enough to confirm that defendant was under the influence, but it caused him to investigate the issue by asking defendant if he had smoked marijuana recently.[3] At that point, defendant was not in custody for purposes of *Miranda*. See *People v Burton*, 252 Mich App 130, 138-140; 651 NW2d 143 (2002). As such, Deputy Goff was not required to give defendant *Miranda* warnings. See *Steele*, 292 Mich App at 319.

During the course of Deputy Goff's questioning, defendant told the deputy that he had smoked marijuana approximately two hours before the accident, and Deputy Goff observed that defendant appeared unusually calm for having just caused a serious car accident with four children in his car. Based on defendant's admissions and Deputy Goff's observations, the deputy had probable cause to believe that a crime had been committed, and he could detain defendant for a drug recognition expert (DRE) evaluation. See *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996); *People v Anthony*, 327 Mich App 24, 43; 932 NW2d 202 (2019). Accordingly, Deputy Goff told defendant that he was detaining him and placed him in handcuffs.

At that point, defendant was in custody for *Miranda* purposes. See *People v Campbell*, 329 Mich App 185, 203; 942 NW2d 51 (2019). Deputy Goff communicated to defendant that defendant was not free to leave by telling defendant that he was being detained and placing him in handcuffs, which supports that defendant was in custody. See *Stansbury v California*, 511 US 318, 325; 114 S Ct 1526; 128 L Ed 2d 293 (1994) ("An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned."). And a person having been placed in handcuffs and told he was being detained would not reasonably believe that they were free to leave. *Steele*, 292 Mich App at 316-317. Because defendant was deprived of his freedom of action in a significant way, we conclude that he was "in custody" for *Miranda* purposes. *Id*. at 316.

---

[3] This investigation into whether defendant was driving while under the influence was warranted even though it was not illegal for defendant simply to possess the marijuana. See Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*. See also *Williams*, 472 Mich at 315.

The prosecution argues that defendant was not subject to custodial interrogation for purposes of *Miranda* because his detention lacked the inherently coercive pressures *Miranda* was designed to guard against. We disagree. As explained by the United States Supreme Court almost 40 years ago, "for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v Beheler*, 463 US 1121, 1125; 103 S Ct 3517; 77 L Ed 2d 1275 (1983). Because defendant was deprived of his freedom of action in a significant way, he was subject to the equivalent of a formal arrest, and therefore should have received *Miranda* protection. See *id*.[4]

In sum, defendant was "in custody" after Deputy Goff handcuffed and searched him before transporting him for continued investigation for operating while intoxicated. As such, the statements defendant made after that point were subject to *Miranda* protections. This included defendant's statement identifying the substances found in his pocket and his statement that he had used methamphetamine that morning. Because defendant was not advised of his *Miranda* rights before making those statements, the trial court clearly erred by admitting them. See *Mendez*, 225 Mich App at 382.

Despite this error, defendant is not entitled to reversal because the erroneous admission was harmless. See *McRunels*, 237 Mich App at 184-185. Defendant's statements to Deputy Goff before he was detained were admissible for the reasons explained, and defendant's statements to Trooper Lee were admissible because defendant was advised of his *Miranda* rights when he was in the patrol car before speaking with Trooper Lee. Further, suppression of any physical evidence that resulted from defendant's inadmissible statements would not be subject to suppression. See *Campbell*, 329 Mich App at 205; *United States v Patane*, 542 US 630, 643; 124 S Ct 2620; 159 L Ed 2d 667 (2004) (explaining that exclusion of the unwarned statement "is a complete and sufficient remedy" for any perceived *Miranda* violation, and "the prophylactic rule of *Miranda* does not extend to the physical fruit of a voluntary, albeit unwarned, statement"). Thus,

---

[4] In support of its argument, the prosecution relies primarily on *Elliott*, 494 Mich at 305-315, which in turn relied primarily on *Howes v Fields*, 565 US 499; 132 S Ct 1181; 182 L Ed 2d 17 (2012). Both *Fields* and *Elliott* concerned incarcerated individuals, and *Fields* identified "three strong grounds" why an incarcerated person may not experience the coercive pressure of *Miranda* custody. *Fields*, 565 US at 511. "First, questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest." *Id*. "Second, a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release." *Id*. "Third, a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id*. at 512. Unlike *Fields* and *Elliott*, all three of these reasons support why an individual in defendant's position *would* be subject to the coercive pressure that *Miranda* was designed to protect against. A person who was just told he was being detained and placed into handcuffs—thereby having his freedom of action restrained in a significant way—would be experiencing some degree of shock; a person not serving a sentence would likely be lured into speaking in the hope of a prompt release; and a person who is being questioned by a detaining officer knows that the detaining officer has the authority to release the person.

defendant's statement to Deputy Goff that he had used marijuana; defendant's statements to Trooper Lee that he had used methamphetamine the day before the accident and marijuana twice on the morning of the accident; Trooper Lee's findings, including his belief that defendant was under the influence of a central nervous system (CNS) stimulant and cannabis and, therefore, was unable to safely drive a car; and the results of defendant's blood testing were all admissible. See *Steele*, 292 Mich App at 320. Further, because Deputy Goff had probable cause to place defendant under arrest as explained earlier, it was permissible for the deputy to search defendant, see *People v Nguyen*, 305 Mich App 740, 754-755; 854 NW2d 223, 232 (2014), which resulted in Deputy Goff finding marijuana and methamphetamine on defendant's person. All of the foregoing evidence—which was independent of defendant's postdetention statements to Deputy Goff—was sufficient for the jury to find beyond a reasonable doubt that defendant had committed the offenses. See *People v Henry (After Remand)*, 305 Mich App 127, 148-149; 854 NW2d 114 (2014). Because the admission of the statements was harmless, defendant is not entitled to reversal. See *McRunels*, 237 Mich App at 184-185.

Defendant argues next that there was no applicable exception to the warrant requirement to permit officers to search defendant's car without a warrant. We disagree.

This Court reviews for clear error a trial court's findings of fact in a suppression hearing. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). However, this Court reviews de novo questions of law on the issue of suppression. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007).

The Fourth Amendment protects against unreasonable searches and seizures. *People v Jones*, 260 Mich App 424, 428; 678 NW2d 627 (2004). Evidence obtained in violation of the Fourth Amendment is generally inadmissible in criminal proceedings as substantive evidence. *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000). In general, a search is unreasonable unless the officers obtained a warrant or the search fell under an exception to the warrant requirement. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). One such exception is the automobile exception, pursuant to which an officer may search a motor vehicle without obtaining a warrant if probable cause supports the search. *Id*. at 418-419. "Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place." *People v Beuschlein*, 245 Mich App 744, 750; 630 NW2d 921 (2001). Because of the nature of the automobile and its "pervasive governmental regulatory scheme," the automobile is subject to a different standard of reasonableness than is a dwelling. *People v Russell*, 174 Mich App 357, 362; 435 NW2d 487 (1989). The basis for the automobile exception is the lessened expectation of privacy in an automobile. *California v Carney*, 471 US 386, 391; 105 S Ct 2066, 2069; 85 L Ed 2d 406 (1985). Further, an automobile that is an instrumentality of a crime may be lawfully seized and searched without a warrant. *People v Anderson* 166 Mich App 455, 479; 421 NW2d 200 (1988).

Another exception to the warrant requirement is the community caretaking exception. This exception is premised on the notion that officers "perform a variety of functions that are separate from their duties to investigate and solve crimes." *People v Davis*, 442 Mich 1, 20; 497 NW2d 910 (1993). When officers are performing one of these community caretaking functions to enter a protected area, and as a result discover evidence of a crime, that evidence is often admissible.

*Id*. "[T]he defining characteristic of community caretaking functions is that they are totally unrelated to the criminal investigation duties of the police." *Id*. at 22. The community caretaker exception can apply to firefighters "responding to an emergency call involving a threat to life or property." *People v Slaughter*, 489 Mich 302, 316-317; 803 NW2d 171 (2011). The exception permits reasonable intrusions. *Id*. at 319. However, officers are not required to use the "least restrictive means." *Id*. at 321.

The trial court did not err by admitting evidence found as a result of the search of defendant's car. Although defendant argues that the search of defendant's car was not permissible under any exceptions to the warrant requirement, the searches occurred on the basis of the community caretaker exception and the automobile exception.

The first issue is the firefighter's entry into defendant's car, and the first consideration under the community caretaker exception is whether the entry was reasonable on the basis of the circumstances. See *Slaughter*, 489 Mich at 319-320. The firefighter had disarmed the battery of defendant's car to prevent it from setting fire and then was continuing his regular duties in response to a car accident. Presumably for safety reasons, this included the firefighter entering defendant's car to retrieve defendant's proof of insurance for him. This entrance into defendant's car had no purpose of investigating a crime, and it was otherwise reasonable under the circumstances. See *id*. at 317-319.

The second consideration is whether the scope was reasonably necessary. See *Slaughter*, 489 Mich at 320-321. The record indicates that the firefighter went only into the glovebox of the car to look for the insurance information. There is no evidence that the firefighter expanded the search to other areas of the car or for any investigative purpose. See *Davis*, 442 Mich at 20, 25. Thus, the search was permissible under the community caretaker exception—and did not violate defendant's Fourth Amendment rights—because (1) the firefighter's initial entry into the car was reasonable and was not for the purpose of investigating a crime and (2) the scope of the firefighter's search was reasonably necessary for this non-investigatory purpose. See *id*.

The next issue is whether Deputy Goff's entrance into the car was permissible after the firefighter told him that he had seen "possible paraphernalia." Under the automobile exception, once Deputy Goff had probable cause to believe that evidence of a crime was within defendant's car, he was able to search it without a warrant. See *Kazmierczak*, 461 Mich at 418-419. Deputy Goff knew that an accident had just occurred, defendant seemed surprisingly calm for having just caused a serious accident with four kids in his car, and the firefighter, who was lawfully within defendant's car under the community caretaker exception, told him that "possible paraphernalia" was inside. See *People v Carter*, 250 Mich App 510, 518; 655 NW2d 236 (2002); *Russell*, 174 Mich App at 365. Based on the foregoing, Deputy Goff had probable cause to suspect that evidence of a crime existed inside defendant's car, so he could search the automobile under the automobile exception to the warrant requirement. See *People v Clark*, 220 Mich App 240, 243; 559 NW2d 78 (1996). The search did not violate defendant's Fourth Amendment rights.

Defendant argues next that the trial court improperly assessed 10 points for offense variable (OV) 17 because there was no evidence that he showed a reckless disregard for the life or property of other people. We disagree.

This Court reviews de novo whether a trial court properly interpreted and applied sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). This Court reviews for clear error the trial court's factual findings in support of points it assesses under the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The factual findings "must be supported by a preponderance of the evidence." *Id.*

MCL 777.47 addresses OV 17 and provides that 10 points are appropriate when a defendant "showed a wanton or reckless disregard for the life or property of another person." A trial court properly assesses OV 17 when the offense involved the operation of a vehicle. MCL 777.22(1). Wantonness indicates that a person was aware of the risks of his or her action but was indifferent to the result. *People v Feezel*, 486 Mich 184, 196; 783 NW2d 67 (2010).

In this case, the trial court did not clearly err by assessing 10 points for OV 17. See *Hardy*, 494 Mich at 438. Although defendant argues that a reasonably prudent person would have acted in the same manner as he did, defendant used methamphetamine and marijuana before driving with four children in the car, and then pulled out to cross a road with a 55-mph speed limit either without looking or without being able to see. *People v Lardie*, 452 Mich 231, 256; 551 NW2d 656 (1996) (explaining that driving while intoxicated is gross negligence as a matter of law), overruled in part on other grounds by *People v Schaefer*, 473 Mich 418; 703 NW2d 774 (2005). Defendant was hit by a car that was traveling approximately 10 mph *below* the speed limit, limiting the believability that any reasonably prudent driver would have pulled into the same traffic with his sight so obstructed that he could not see a car traveling 10 mph below the speed limit. Although defendant is correct in arguing that the severity of injuries does not determine the scoring of OV 17, defendant's own focus on the victim's actions or injuries is not relevant. Indeed, the trial court did not mention the victim's injuries in reference to its assessment of 10 points for OV 17. Instead, it properly found that getting behind the wheel of a vehicle with four children in it while intoxicated and then pulling into traffic "is a wanton and reckless disregard for the life or property of another person." The driver of the other vehicle involved in the accident testified that he did not have time to react to defendant pulling out in front of him, and defendant admitted during the sentencing hearing that he could not see the traffic when he pulled out, evidencing a disregard for the effect of his actions. Therefore, the trial court's finding that defendant acted with "wanton or reckless disregard" was supported by a preponderance of the evidence when defendant used methamphetamine and marijuana, drove with four children in his car, and pulled out in front of traffic without the ability to see oncoming traffic or without having looked for cross traffic. See *Hardy*, 494 Mich at 438.

Defendant argues next that defense counsel was ineffective for failing to impeach the officers, failing to obtain exculpatory evidence, and failing to obtain an expert witness. We disagree.

The question whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court reviews a trial court's findings of fact for clear error and reviews questions of law de novo. *Id.* Defendant did not preserve his claim of ineffective assistance, so this Court is limited to reviewing mistakes apparent on the record. *Id.*

For a defendant to establish a claim of ineffective assistance, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). A counsel's performance was deficient if it fell below an objective standard of reasonableness. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel's performance prejudiced the defense if there is a reasonable probability that "but for the counsel's deficient performance," the outcome of trial would have been different. See *id*. There exists a strong presumption that defense counsel's decisions constituted sound strategy. *Heft*, 299 Mich App at 83. "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

Defendant argues first that he received ineffective assistance of counsel when defense counsel failed to impeach Deputy Goff when he "perjured himself" and when other witnesses contradicted him. We disagree.

First, defendant has not shown that defense counsel's performance was deficient. See *Fyda*, 288 Mich App at 450. Although defendant identifies potential inconsistencies with Deputy Goff's testimony, defendant has not provided any specific evidence that Deputy Goff willfully lied during any of his testimony. See *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). For instance, defendant points out that, at the preliminary examination, Deputy Goff testified that the police did not have an accident reconstruction done in part because his supervisors determined that one was not necessary, while one of Deputy Goff's supervisors testified during trial that Deputy Goff did not ask if they should do a reconstruction. Initially, Deputy Goff's statement is not necessarily inconsistent because he testified that he called multiple supervisors, and the record is not clear about which one told Deputy Goff a reconstruction was not necessary. But even if the statements were inconsistent, nothing supports that Deputy Goff willfully lied. Defendant also contends that Deputy Goff's testimony was inconsistent when he stated that he detained defendant while waiting for the DRE, but also that he intended to take defendant to the hospital. Both statements, however, related to preparing for defendant to undergo the DRE evaluation and are not clearly inconsistent with each other. See *id*. And, again, nothing suggests that Deputy Goff willfully lied. Defense counsel ably cross-examined Deputy Goff, and it was not objectively unreasonable for defense counsel to attack Deputy Goff's testimony through effective cross-examination instead of accusing Deputy Goff of perjury. Defense counsel's performance in this regard was not deficient.

Second, even if defense counsel's performance was deficient, defendant cannot establish that counsel's failure to object to the testimony as perjury prejudiced defendant. See *id*. Again, defendant has not shown that Deputy Goff willfully lied, but more importantly, each of the alleged "inconsistencies" that defendant has identified were inconsequential. See *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). Moreover, the jury heard a substantial amount of information that supported defendant's convictions, including that the defendant's blood showed the presence of methamphetamine and marijuana, Trooper Lee's observations of defendant and findings from the DRE evaluation, and the accident reconstruction expert's testimony. Because of the significant evidence, there is no reasonable probability that any further impeachment of Deputy Goff's testimony would have changed the outcome of the trial. Therefore, defendant has failed to show that he was prejudiced by defense counsel's impeachment of Deputy Goff. See *Fyda*, 288 Mich App at 450.

Defendant argues next that he received ineffective assistance of counsel when defense counsel failed to impeach Trooper Lee on the basis of inconsistencies between Trooper Lee's report and his testimonies at the preliminary examination and trial. We disagree.

First, defendant has not shown that defense counsel's performance was objectively deficient. See *id*. Although defendant states that Trooper Lee testified that defendant told him that he smoked marijuana while he was driving at 11:00 a.m., Trooper Lee testified at trial only that defendant told him that he had smoked marijuana at approximately 11:00 a.m. While Trooper Lee did testify during the preliminary examination that defendant stated that he smoked marijuana while "he was out," there was little to be gained from impeaching Trooper Lee on that statement— the trooper's testimony remained consistent on the key point that defendant smoked marijuana shortly before the accident. It was reasonable for defense counsel to instead focus cross-examination on Trooper Lee's testimony about defendant's alleged intoxication. On that subject, defense counsel thoroughly cross-examined Trooper Lee about his observations of defendant, the effect defendant's medications or an injury from the accident could have had on defendant's performance during the DRE evaluation, whether Trooper Lee properly relied on the DRE manual in conducting his examination of defendant, whether the manual had been peer reviewed, and whether all the tests were standardized. See *People v McFadden*, 159 Mich App 796, 407 NW2d 78 (1987). Defense counsel's cross-examination of Trooper Lee was not objectively deficient. See *Fyda*, 288 Mich App at 450.

Defendant further argues that defense counsel should have obtained defendant's cell phone and home surveillance system data to show that defendant was at home at the time that Trooper Lee testified that defendant said he was driving. Defendant argues that video evidence would have shown defendant at home until 12:00 p.m. Assuming that is true, such a showing would not have helped defendant's case. The evidence presented established that defendant admitted multiple times to using methamphetamine and marijuana before the accident, Trooper Lee's examination of defendant led him to believe that defendant had used a CNS stimulant and cannabis, and defendant's blood testing confirmed the presence of methamphetamine and marijuana. To rebut this evidence, defense counsel thoroughly questioned each witness and had prepared potential witnesses, including a potential rebuttal DRE witness, which counsel ultimately chose not to call after the close of the prosecution's case. Defense counsel plainly had a trial strategy, and proving that defendant was at home until 12:00 p.m. was not part of that strategy, and would not have otherwise assisted defendant's case. Defense counsel's strategy was reasonable, and counsel's failure to present evidence that defendant was at home until 12:00 p.m. did not fall below an objective standard of reasonableness. See *Fyda*, 288 Mich App at 450.

Second, defendant has not provided any evidence that defense counsel's failure to impeach Trooper Lee prejudiced defendant. See *id*. Defense counsel thoroughly cross-examined Trooper Lee about his process and observations. The jury, therefore, had the opportunity to hear the testimony and determine what, if anything, to believe. See *People v Bowyer*, 108 Mich App 517, 522; 310 NW2d 445 (1981). Any evidence showing defendant at home would not have negated the evidence that defendant's blood showed the presence of methamphetamine and marijuana, confirming Trooper Lee's finding that defendant was under the influence of substances and unsafe to drive. There is no indication of a reasonable likelihood that the outcome of the proceedings would have been different had defense counsel further impeached Trooper Lee. See *Heft*, 299

Mich App at 84-85. Defendant has, therefore, failed to establish that counsel's performance prejudiced him. See *Fyda*, 288 Mich App at 450.

Defendant argues next that defense counsel should have obtained an expert to conduct a reconstruction of the car accident and that there was "no strategic reason why counsel would have abandoned the defense."

First, defendant has not shown that defense counsel's performance was objectively deficient. See *id*. A reconstruction expert testified at trial, and defendant has failed to specify how a second reconstruction expert would rebut the expert that testified. Defendant did not testify at trial, but defendant has never denied that he pulled into the intersection when he could not, or did not, see the oncoming traffic. It is unclear what evidence a different expert would have provided to rebut these undisputed facts. See *People v LeBlanc*, 465 Mich 575; 640 NW2d 246 (2002). Further, there is a strong presumption that decisions about whether to retain witnesses, including expert witnesses, is part of trial strategy. See *People v Carbin*, 463 Mich 590; 623 NW2d 884 (2001); *Payne*, 285 Mich App at 189. There is no explanation in the record for why defense counsel did not call an accident reconstruction expert, but defense counsel may not have been able to find an expert to rebut the evidence. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). Defendant has provided no evidence that another expert would have testified in a way that supported a different version of the accident. Further, defense counsel cross-examined the reconstruction expert, and there is no evidence that he failed to adequately do so. Therefore, defense counsel's decision to not call an expert witness was not objectively deficient. See *Fyda*, 288 Mich App at 450.

Second, defendant has not provided any evidence that defense counsel's decision not to call an accident reconstruction expert prejudiced him. See *id*. There is no indication of a reasonable likelihood that calling an expert would have changed the outcome of the proceedings. See *Heft*, 299 Mich App at 84-85. Even if defense counsel had an expert in accident reconstruction testify, there was a substantial amount of evidence supporting defendant's convictions outside of the prosecution's expert's testimony. See *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019). Defendant has, therefore, failed to establish that counsel's performance prejudiced him. See *Fyda*, 288 Mich App at 450.

Defendant argues next that the prosecution did not preserve and disclose exculpatory information. We disagree.

"This Court reviews de novo a defendant's claim of a constitutional due-process violation." *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011). MCR 6.201 governs discovery in a criminal case. See *People v Phillips*, 468 Mich 583, 588; 663 NW2d 43 (2003). MCR 6.201(B) provides that, upon request, the prosecution must disclose to the defendant any exculpatory evidence known to it. The prosecution violates a defendant's due process when it suppresses evidence favorable to the defendant when the evidence is material, irrespective of the prosecution's good or bad faith. *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215) (1963). A *Brady* violation occurs when: "(1) the prosecution has suppressed evidence, (2) that is favorable to the accused; and (3) that is material." *Chenault*, 496 Mich at 150. The government is responsible for evidence in its control, even when it is unknown to the prosecution. *Id*. "Evidence is favorable to the

defense when it is either exculpatory or impeaching." *Id*. To establish that the evidence was material, the defendant must show that there was a reasonable probability that the result of the proceeding would have been different had the prosecution disclosed it to the defense. *Id*. The essential question is whether the defendant received a fair trial in the absence of the evidence. *Id*.

Separate from the failure to disclose evidence, "[f]ailure to *preserve* evidentiary material that may have exonerated the defendant will not constitute a denial of due process unless bad faith on the part of the police is shown." *People v Hunter*, 201 Mich App 671, 677; 506 NW2d 611 (1993). "Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992).

In this case, the evidence at issue is body camera footage, patrol car footage, and access to the actual vehicles involved in the accident. For the footage, defendant argues that it was never turned over to him. With respect to the vehicles, defendant argues that he should have been given access to the vehicles in order to retrieve the vehicles' "black boxes," from which defendant could have gathered information about the vehicles' movements—such as their respective speeds— before the crash.

First addressing defendant's arguments in the context of an alleged *Brady* violation, it is undisputed that the evidence was suppressed, as defendant did not obtain access to the body camera footage, patrol car footage, or the cars involved in the accident. See *Chenault*, 495 Mich at 156. Next, the question is whether the evidence was favorable to defendant. See *id*. Defendant argues that the footage would have been exculpatory as it would have shown the other driver telling officers at the scene that he was driving at least 60 to 65 mph, that the methamphetamine was found on the ground in the place "where the officers made the Defendant stand at the scene," and that Deputy Goff mishandled the evidence, which would have enabled defense counsel to move the court to suppress the evidence. Favorability to a defendant is a low threshold, including the ability to impeach witnesses, and defendant's intent to use this body camera footage to impeach the officers supports finding that this evidence was favorable to him. See *id*.

However, defendant has not shown that the evidence was material. See *id*. Although defendant argues that the video footage would have shown that the methamphetamine was found on the ground, defendant admitted to using methamphetamine and marijuana, and defendant's use was confirmed by his blood draw. See *Heft*, 299 Mich App at 79-80. Similarly, defendant's argument that footage showing the mishandling of the evidence would have affected the outcome of the trial is unpersuasive on the basis of Trooper Lee's assessment that defendant was unable to safely drive a car, defendant's statements about using methamphetamine and marijuana, and the blood testing showing the substances in defendant's blood.

Next, defendant fails to show that the government denied him a fair trial in its failure to *preserve* evidence that was exculpatory or that the government acted in bad faith. See *Hunter*, 201 Mich App at 677. As explained earlier, neither the video footage nor the cars were exculpatory. See *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017). Although defendant alleges that the government acted in bad faith in failing to preserve the evidence, his claim is not supported in the record. See *Jones*, 301 Mich App at 581; *Johnson*, 197 Mich App at 365-366. Specifically, Deputy Goff testified that he thought he had activated his body camera and that he was not sure if he forgot or if he did not properly do so. Further, he explained that on the day of the accident he

was using a "spare car" that did not have enough memory in its camera to preserve footage. There is no further indication in the record about what happened to the footage.

Additionally, although defendant argues that the preservation of the cars would have affected the speed of the reconstruction, the accident reconstruction expert testified that after multiple different calculations, the fastest that the other driver was traveling at the time of the accident was 47 mph, on a road with a speed limit of 55 mph. No witness testified that the other driver ever made a statement about traveling 60 or 65 mph as defendant claims, but instead, the other driver specifically testified that he was driving approximately 45 mph because he had just shifted into fourth gear. Moreover, there is no information in the record about why the cars were not preserved, if cars involved in accidents are regularly preserved, or that the expert needed the cars to have a more accurate reconstruction. Therefore, there is no indication in the record that the failure to preserve was purposeful or unusual, let alone in bad faith. Defendant has, therefore, failed to show that he was denied a fair trial by the government's failure to preserve evidence. See *Hunter*, 201 Mich App at 677.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien